**STATE of Tennessee, Appellee,**

**v.**

**Bobbie MILLSAPS, Appellant.**

Court of Criminal Appeals of Tennessee, Knoxville.

Dec. 12, 1995.

Roger Hooban, Knoxville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Amy L. Tarkington, Assistant Attorney General, Criminal Justice Division, Nashville, Michael L. Flynn, District Attorney General, Maryville, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Bobbie G. Millsaps, entered guilty pleas in the Circuit Court of Blount County to one count of embezzlement and one count of theft of property over $10,000. The trial court imposed concurrent sentences of three years for the embezzlement conviction, a class D felony, and four years for the theft conviction, a class C felony.[1] The appellant now appeals, raising two issues for our review. First, the appellant contends that the trial court should have imposed an alternative sentence. Second, the appellant contends that the trial court erred in ordering that proceeds from the sale of the appellant's home should apply towards restitution rather than attorneys fees.[2]

---

1. The embezzlement charge alleged that between January, 1988, and October, 1989, the defendant did embezzle approximately $21,997.73 by virtue of her employment. Under the law existing during the period of the commission of this offense, this constituted a violation of Tenn.Code Ann. § 39–3–1121, Embezzlement by private officer, clerk, or employee over $200.00. Pursuant to Tenn.Code Ann. § 40–35–118 (1994 Supp.), for purposes of sentencing under the Criminal Sentencing Reform Act of 1989, this offense is a class D felony.

The theft of property charge alleged theft of money over $10,000.00 during the period of November, 1989, through September 11, 1991. This offense is a class C felony pursuant to Tenn. Code Ann. § 39–14–105(4) (1991).

2. The record reflects that the appellant's notice of appeal pursuant to Tenn.R.App.P. 3(b) was

After a review of the record, we modify the appellant's sentences.

## I. FACTS

On June 16, 1992, the trial court conducted a sentencing hearing to determine the length and manner of service of the sentences to be imposed. At the hearing, the following facts were developed. The appellant was employed as a bookkeeper in charge of accounts receivable at Ross Furniture Company, a family owned corporation which engaged in the retail sale of furniture in Blount County. The appellant was employed with the furniture company for eighteen years and, according to testimony, was treated like a member of the family. At the time of her termination from Ross Furniture, the appellant was earning the sum of $250.00 per week.

In August, 1991, the appellant missed a day of work due to an auto accident. While she was absent, a company officer discovered a number of discrepancies in the accounting records entered by the appellant. Upon questioning, the appellant was unable to reconcile the discrepancies, and ultimately an audit was performed. The audit revealed that from January, 1988, through August, 1991, the sum of $80,220.19 had been stolen from the furniture company. A corporate officer and family member testified that the theft of funds from the business had created a financial hardship for the family members involved in its operation.

The presentence report revealed that the appellant was a fifty-four year-old married female with no criminal record. The appellant testified that she had "borrowed" the money from her employer in order to pay for food, shelter, transportation, and medical bills for her son, daughter, and grandchildren who had fallen upon financially difficult times. The appellant stated that she began embezzling funds from her employer when her daughter suffered severe injuries in an automobile accident. The stolen funds were used to pay her daughter's uninsured medical bills which totaled approximately $20,000.00. In addition, she has paid her son's child support payments, medical expenses incurred from the premature birth of a grandchild, and medical expenses resulting from her husband's heart attack. The appellant contends that she did not personally benefit from the use of any of the embezzled funds. The appellant also testified that since being terminated from Ross Furniture, she devotes her days to taking care of her 74 year old, invalid mother, who has Alzheimer's disease. Testimony revealed that the appellant's husband earned $6.00 per hour and was the sole source of income for the family. The appellant's only asset was her residence, which she owned jointly with her husband. The appellant testified that she was attempting to sell her home, subject to the two outstanding mortgages which totaled approximately $38,500.00.

At the conclusion of the hearing, the trial court imposed concurrent sentences of four years in the state penitentiary for the theft conviction and three years in the penitentiary for the embezzlement conviction. The court acknowledged the plight of the appellant stating, "I've never heard anybody that's had so many horrible medical problems in all my life. But that's no excuse." In denying probation, the trial court found:

Looking at the sentencing considerations, I think this is a case where the magnitude of money involved, the fact that you are unable to make any kind of restitution, the fact that crimes such as this are committed by people who are intelligent and calculated in what they do, and I think probably deterrence—if sentencing in a criminal case can have any deterrent effect on any crime, it ought to be able to have an effect on this kind of crime, because its something intelligent people do and plan. I think confinement is necessary to avoid depreciating the seriousness of this offense because it involves an incredibly large amount of money. Deterrence, as I said, is a factor. This is a problem in this community. There was a case almost like this not three weeks ago where a lady stole ninety-five or a hundred thousand dollars

---

given on June 16, 1992. This notice encompassed the appellant's first issue, related to sentencing. On November 5, 1993, the appellant gave notice of appeal which formed the basis for appellant's second issue. These two issues were consolidated in September, 1993.

from an employer, a small business, over the course of about two or three years.

The trial court also ordered the appellant to pay $83,740.19 in restitution and placed a lien on the appellant's home to secure a portion of the restitution ordered.[3]

Following the imposition of sentence, the appellant filed a notice of appeal pursuant to Tenn.R.App.P. 3. While the appeal was pending, the appellant's residence was sold. The appellant's one-half interest in the net proceeds of the sale was $5,696.00. On July 2, 1992, upon motion by the appellant, the trial court released the lien on the proceeds of the sale and ordered the appellant to deposit her portion of the proceeds into her counsel's escrow account, pending final disposition of the case. On July 29, 1993, the appellant filed a motion for partial distribution of trust funds, wherein she requested a court order that $3,500 of the trust account be paid to her attorney for legal services provided in her defense. After a hearing conducted on September 7, 1993, the trial court denied this motion. Following testimony that no restitution had been paid by the appellant, the trial court ordered that the entire amount of the trust be applied towards restitution to the victim. Additionally, the trial court ordered the appellant's counsel to immediately transfer the entire amount in the trust account plus interest to the Office of the Circuit Court Clerk of Blount County, pending final disposition of this case. The total amount transferred was $5,832.26. On November 5, 1993, the appellant filed a notice of appeal of the trial court's ruling.

The appellant now appeals from the sentence imposed and from the order denying the appellant's motion for attorneys fees and applying the trust fund towards restitution.

## II. SENTENCING

■ Appellate review of a sentence is *de novo*, with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn.Code Ann. § 40–35–401(d) (1990). The appellant has the burden of establishing that the sentence imposed by the trial court was erroneous. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991); *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn.Crim.App.1991). In determining whether the appellant has met this burden, we must consider the evidence received at the trial and the sentencing hearing, the presentence report, the principles of sentencing, argument of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation. *Ashby,* 823 S.W.2d at 168; Tenn.Code Ann. § 40–35–210 (1990). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby,* 823 S.W.2d at 169. The presumption also does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn.Crim.App. 1993). For reasons subsequently discussed in this opinion, we conclude that the sentencing court applied inappropriate sentencing considerations, and, therefore, we need not presume that the sentences imposed by the court are correct.

### A. Alternative Sentencing[4]

■ In deciding whether a defendant should receive an alternative sentence, the first step is to determine whether the defendant is entitled to the statutory presumption of being a favorable candidate for alternative sentencing. *See* Tenn.Code Ann. § 40–35–102(6) (1990). In order to be eligible for this presumption, the defendant must meet two requirements. The defendant must (1) be an especially mitigated or standard offender who has been convicted of a class C, D or E felony, and (2) must *not* have a criminal history "evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation." Tenn.

---

3. The trial court ordered as restitution the additional sum of $3,500.00 incurred as a result of the audit expenses.

4. The appellant does not contest the length of the sentences, only the manner of service.

Code Ann. § 40–35–102(5) (emphasis added) (1990); *see also* Tenn.Code Ann. § 40–35–102(6) (1990); *State v. Byrd,* 861 S.W.2d 377, 379 (Tenn.Crim.App.1993). In this case, as a first time offender of class C and D felonies, the appellant is entitled to the presumption. Thus, the State must provide evidence establishing that the appellant is not a favorable candidate for alternative sentencing. *See* Tenn.Code Ann. § 40–35–102(6) (1990).

Guidance in determining what constitutes evidence to rebut the presumption may be found in Tenn.Code Ann. § 40–35–103(1) (1990), which states:

> Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*See Ashby* 823 S.W.2d at 169; *State v. Cummings,* 868 S.W.2d 661, 665 (Tenn.Crim.App. 1992).

In this case, the trial court denied an alternative sentence due, in essence, to the nature of the offense, the appellant's inability to make restitution, and deterrence.

### i. Deterrence

■ Again, Tenn.Code Ann. § 40–35–103(1)(B) (1990) provides that, in deciding whether confinement is necessary, a court may consider whether "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses." Usually, a finding of deterrence cannot be conclusory only, but must be supported by proof. See e.g. *Ashby,* 823 S.W.2d at 170. However, in a case involving facts almost identical to those in the instant case, we observed

> that the record supports the trial court's reasoning that if people with similar abilities and in similar positions to the defen-

dant believed that they could commit offenses of a similar magnitude without having to be confined and without making real restitution, there would be a significant number of them who would yield to criminal temptation with impunity and little concern for the harm caused others ... Unquestionably, [the sentencing court] rightfully considered ... the need for an effective deterrence to others likely to commit similar, serious offenses.

*State v. Frank,* No. 03C01–9209–CR–00303, 1993 WL 539401 (Tenn.Crim.App. at Knoxville, December 22, 1993). Clearly, therefore, the sentencing court in the instant case could properly rely upon deterrence in denying an alternative sentence.

### ii. The Nature of the Offense

■ In order to deny an alternative sentence because of the nature of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement. *State v. Hartley,* 818 S.W.2d 370, 374–75 (Tenn.Crim.App.1991) (citations omitted). In the instant case, the trial court noted that "an incredibly large amount of money was involved."

■ We conclude that the trial court could not deny the appellant an alternative sentence on the basis of the amount of money stolen. The amount of money stolen in this case determined the offenses for which the appellant was charged and convicted, i.e. theft over $10,000.00 and embezzlement over $200.00. In *State v. Frank,* No. 03C01–9209–CR–00303, 1993 WL 539401, this court observed that the legislature's provision of alternative sentencing eligibility "for theft offenses involving sums of the magnitude seen in [that] case would indicate that the amount, alone, should not foreclose serious consideration of ... an appropriate sentencing alternative." Similarly, in *Hartley,* this court held that "[o]nce the legislature has specifically authorized the use of sentencing alternatives to confinement for a particular offense, trial courts may not summarily impose

a different standard by which probation is denied solely because of the defendant's guilt for that offense. 818 S.W.2d at 37 (citation omitted). We have already concluded that, under the Criminal Sentencing Reform Act of 1989, the appellant is not only eligible for alternative sentencing, but presumed to be a favorable candidate.

### iii. Restitution

■ The trial court also denied alternative sentencing because the appellant is "unable to make any kind of restitution."[5] One purpose of the 1989 Sentencing Act is to encourage restitution to victims where appropriate. Tenn.Code Ann. § 40–35–102(3)(D) (1994 Supp.). See also Tenn.Code Ann. § 40–35–103(6) (1990). However, nowhere does the Act suggest that a sentencing court may deny a defendant, otherwise eligible, an alternative sentence because the defendant is unable to pay restitution. Indeed, this court has previously suggested that the inability to make restitution cannot, as in this case, form the basis for a denial of an alternative sentence. See Byrd, 861 S.W.2d at 381. Moreover, by simply ordering the appellant's confinement for four years, the sentencing court has reduced the potential for the defendant to make real restitution. Frank, No. 03C01–9209–CR–00303. Finally, the United States Supreme Court, in Bearden v. Georgia, 461 U.S. 660, 667–673, 103 S.Ct. 2064, 2070–2073, 76 L.Ed.2d 221 (1983), implied that, if a state determines that alternative measures of punishment, other than imprisonment, are adequate to meet the state's interest in punishment and deterrence, the state may not then imprison a defendant solely because of the defendant's inability to pay a fine or restitution. To do so would be contrary to the fundamental fairness required by the Fourteenth Amendment.

### iv. De Novo Review

■ Therefore, we must determine whether, in this case, an alternative sentence would adequately meet the state's interest in punishment and deterrence. Based upon our de novo review of the record, we conclude that the appellant is an eligible and appropriate offender for sentencing under the Tennessee Community Corrections Act. See Tenn.Code Ann. § 40–36–106 (1994 Supp.). The record reflects the appellant's considerable potential for rehabilitation. See 40–35–103(5) (1990). The appellant is fifty-eight years of age with an unblemished record. At the time of the sentencing hearing, she devoted her days to caring for her bedridden mother. The record indicates that she has been a hard worker all her life. Finally, the appellant has expressed remorse for her unlawful conduct.

■ However, we also conclude that the appellant's sentence should be combined with a period of confinement. Tenn.Code Ann. § 40–35–104(c)(5) and (8) (1994 Supp.). We base this conclusion upon our determination, in accordance with the finding of the trial judge, that confinement is particularly suited to provide an effective deterrence to people with abilities similar to the appellant's and in positions such as the one occupied by the appellant prior to the discovery of her misconduct. Moreover, we note that, although the appellant has no previous history of criminal conduct, the appellant's conduct in this case was repetitive and continued over several years.

The order of restitution entered by the trial court remains in effect. The appellant's sentences are modified as follows:

(1) Theft of property over $10,000.00, a class C felony; the appellant is ordered to serve a period of sixty (60) days confinement

---

5. We note that the issue of ability to make restitution appears to be in dispute. At the sentencing hearing, the appellant testified that she had offered to pay $10,000.00 to the victim in one payment, followed by $500.00 per month. She further testified that this offer was submitted through the furniture company's attorney and was rejected by Ross Burchfield on behalf of Ross Furniture. However, the appellant conceded that, at the time of the sentencing hearing, she was unable to perform under the original offer. Nevertheless, she stated that she was willing to make restitution payments, as financially possible. As mentioned earlier, the appellant's sole means of support was her husband, who was earning $6.00 per hour. Given the appellant's obligation to care for her invalid mother, it is unclear whether the appellant would be able to obtain employment.

in the county jail or workhouse. After completion of this period of confinement, the appellant is sentenced to the local community corrections program for a term of four years. The appellant will be required to perform 200 hours of community service and to comply with all other reasonable conditions imposed by either the trial court or program guidelines which are deemed necessary to meet the goals of the Community Corrections Act. Should the trial court decide to impose a schedule of restitution payments, the amount of such payments should be based upon the appellant's financial circumstances. Tenn. Code Ann. § 40–36–104(2) (1990).

(2) Embezzlement over $200.00, a class D felony; the appellant is ordered to serve a period of sixty (60) days confinement in the county jail or workhouse. After completion of this period of confinement, the appellant is sentenced the local community corrections program for a term of four years.

The sentences imposed are ordered to be served concurrently.

### III. ATTORNEY'S FEES

 The appellant contends that the trial court erred in denying her motion to apply a portion of the proceeds from the sale of her home to attorney fees incurred in her defense. The record reflects that the trial court, instead, ordered that those funds be applied as partial restitution.

 Initially, we must determine whether we have jurisdiction to decide this issue. We note that this court acquires jurisdiction of a case in its entirety, and thus may, as an incident thereto, possess jurisdiction of matters of which it would not otherwise have cognizance were those matters independently presented. Indeed, our jurisdiction extends by statute to review of the final judgments of trial courts in "proceedings instituted with reference to or arising out of a criminal case." Tenn.Code Ann. § 16–5–108(a)(2) (1994). We conclude that the issue before us arises out of a criminal case and is, therefore, reviewable by this court.

Moreover, the disposition of the proceeds from the sale of the appellant's home was subject to the sound discretion of the trial judge. Restitution is a proper sentencing consideration for the trial court. Tenn.Code Ann. § 40–35–102(3)(c) (1994). Therefore, upon examination of the record, we conclude the trial court did not abuse its discretion. This issue is without merit.

### IV. CONCLUSION

The trial court's denial of the appellant's request for an alternative sentence is reversed, the sentences imposed by the trial court are modified as reflected in this opinion, and this case is remanded for entry of sentences consistent with this opinion.

WELLES, J., and JOHN A. TURNBULL, Special Judge, concur.