IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2001 Session

## STATE OF TENNESSEE v. RONNIE D. DENSON

**Direct Appeal from the Circuit Court for Cheatham County**
**No. 13410     Robert E. Burch, Judge**

_____

**No. M2000-02583-CCA-R3-CD - Filed September 18, 2001**

_____

The defendant pled guilty to aggravated assault with an agreed four-year sentence, and the manner of service to be determined by the trial court. The trial court denied the defendant any alternative sentence and ordered that the defendant serve his sentence in the Department of Correction. The defendant appeals the trial court's judgment denying him an alternative sentence. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Sam Wallace, Sr., Nashville, Tennessee, for the appellant, Ronnie D. Denson.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams III, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General, and Robert S. Wilson, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

On October 5, 1999, the Chatham County Grand Jury indicted the defendant, Ronnie D. Denson, for aggravated assault, a Class C felony. See Tenn. Code Ann. § 39-13-102. The defendant pled guilty to the indictment on June 28, 2000, and agreed to a four-year sentence as a Range I standard offender with the manner of service to be determined by the trial court. The trial court held a sentencing hearing on October 10, 2000. At the conclusion of the hearing, the trial court ordered the defendant to serve his four-year sentence in the Department of Correction. The defendant now appeals, asserting that the trial court erred by denying him an alternative sentence. After review, we find no error in the trial court's judgment.

**Facts**

Shortly after midnight on Sunday, June 13, 1999, the defendant was awakened by his girlfriend, while at her house in Cheatham County, Tennessee. His girlfriend informed him that she heard a noise outside and had seen her ex-husband, Tom Wyatt, standing in her driveway with what appeared to be a sledge hammer raised over his head. The defendant went outside to investigate, but did not see Mr. Wyatt. As the defendant got in his van and attempted to locate Mr. Wyatt, he noticed that his tires had been cut. He and his girlfriend then noticed that her car tires were also cut.

The two called 9-1-1 and reported the vandalism. Deputy Joseph Cantrell responded and advised the defendant and his girlfriend that they could obtain a warrant against Mr. Wyatt, and he offered to transport them if they wanted to obtain one. According to the deputy, the defendant and his girlfriend both told him that they would wait and talk about it before they made a decision. However, at the sentencing hearing, the defendant testified that the deputy told them that they would have to wait until Monday morning to obtain a warrant.

The next day, Sunday, the defendant spent most of the day drinking beer and replacing the tires on the two vehicles. Although the defendant got really mad while changing the tires, he testified that once he got the tires replaced, he was no longer mad. After replacing the tires, the defendant prepared to leave for Madison, Tennessee. As he left town, however, he drove to Mr. Wyatt's home to confront him about the vandalism. The defendant claimed that when he got to Mr. Wyatt's home, he walked past a parked car and Mr. Wyatt jumped from the car and began swinging at him. Although he admitted going to Mr. Wyatt's home, hitting him several times, and kicking him, he claimed he only went there to talk to Mr. Wyatt about paying to replace the eight tires.

The victim testified at the sentencing hearing that he went to his ex-wife's house on June 13, 1999, and cut the tires on the two vehicles. After cutting the tires, he returned home and began drinking. The next day, prior to the altercation with the defendant, he was parked in his driveway, seated in the driver's seat, and listening to music. His only recollection of what happened was that the defendant did not speak to him, reached in the driver's window, grabbed him by the throat, and rendered him unconscious.

Two witnesses reported seeing the victim lying next to his car "shaking as if he was having a seizure," and they called 9-1-1 from a neighbor's home. Officer Demonbreun responded to the call and the victim was non-responsive. The victim was then transported to Vanderbilt Hospital via LifeFlight. His injuries included a deep cut about his left eye, a shattered jaw bone, three broken teeth, and permanent brain damage. The victim was unconscious for three weeks and required an additional two months of in-patient physical therapy to relearn skills such as walking, bathing, and cooking.

At the conclusion of the sentencing hearing, the trial court found that two enhancement factors existed: That the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range, see Tenn. Code Ann. § 40-

35-114(1), and that the defendant treated the victim with exceptional cruelty during the commission of the offense, see Tenn. Code Ann. § 40-35-114(5). The trial court noted the defendant's prior conviction for simple assault in April of 1993 as establishing the first enhancement factor. However, the court gave it little weight. In applying the second enhancement factor, the trial court noted the manner in which the defendant carried out the instant assault and described how the defendant inflicted very serious and permanent injuries upon the victim. The trial court stated that the exceptional cruelty factor was "very strongly weighted." The trial court found that no mitigating factors applied.

The trial court determined that the defendant was less than truthful about an officer informing him that he could not get a warrant against the victim until Monday morning. Furthermore, the trial court found that the defendant lacked candor with the court by claiming that the victim was the aggressor. Finally, the trial court found that confinement was necessary to avoid depreciating the seriousness of this offense, and that confinement was needed to provide an effective deterrent to others likely to commit similar offenses. See Tenn. Code Ann. § 40-35-103(1)(B). Given these findings, the trial court ordered that the defendant serve his four-year sentence in the Department of Correction.

## Analysis

The defendant's sole issue is that the trial court erred in denying him an alternative sentence. This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness, see Tenn. Code Ann. § 40-35-401(d), conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances, see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, our review is de novo with no presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). Here, the trial court complied with the statutory directives; therefore, our review is de novo with a presumption of correctness. In this case, the defendant, as the appealing party, must show that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). Aggravated assault is a Class C felony; therefore, this defendant is presumed favorable for an alternative sentence. This presumption does not apply, however, to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), perm. app. denied, (Tenn. 1994). This court is required to attribute great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying. A defendant is eligible for probation if the sentence received by the defendant is

eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). This defendant pled to an agreed four-year sentence and is therefore eligible for probation.

A court should consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they relate to the section 40-35-103 considerations. State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-210(b)(5). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Boggs, 932 S.W.2d 467, 476-77 (Tenn. Crim. App. 1996). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. Byrd, 861 S.W.2d at 380. Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). Because the defendant here is seeking probation, he bears the burden on appeal of showing the sentence imposed is improper and that probation will be in the best interests of both him and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interests of both the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

Probation may be denied based solely on the circumstances surrounding the offense. State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of a excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. Hartley, 818 S.W.2d at 374-75.

In determining if incarceration is appropriate, a trial court considers (1) the need to protect society by restraining a defendant having a long history of criminal conduct; (2) the need to avoid

depreciating the seriousness of the offense; (3) whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses; and (4) whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); see also Ashby, 823 S.W.2d at 169; State v. Grigsby, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); State v. Millsaps, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

The trial court made the following findings in denying the defendant any form of alternative sentence:

(1) That the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1);

(2) that the defendant treated the victim with exceptional cruelty during the commission of the offense. See Tenn. Code Ann. § 40-35-114(5);

(3) that confinement was necessary to avoid depreciating the seriousness of this offense. See Tenn. Code Ann. § 40-35-103(1)(B); and

(4) that confinement was necessary to provide an effective deterrent to others likely to commit similar offenses. See Tenn. Code Ann. § 40-35-103(1)(B).

In support of the first enhancement factor, prior criminal convictions, the defendant had a prior assault conviction from April of 1993, in which he was originally charged with aggravated assault, but pled guilty to simple assault. The trial court stated that he gave little weight to this factor. We agree with the trial court's application of that factor. Next, the trial court found that the defendant treated the victim with exceptional cruelty during the commission of the crime. See Tenn. Code Ann. § 40-35-114(5). In so finding, the trial court stated:

Aggravated assault can be committed by the infliction of a – of a serious bodily injury upon another. That was done. And once that was done, the defendant continued to inflict injury upon [the victim], kicking him while he was down, to such an extent that he was permanently and seriously injured. The Court has noticed [the victim's] gait as he – as he walked to the witness stand. And even before he testified in his testimony concerning the reason for that, I noted in my notes that it was unsteady and explained by the loss of equilibrium. His speech was halting. The Court finds that he has been severely, permanently injured because of this, much, much more, many times more than . . . required for a conviction for aggravated assault.

The trial court, by explaining on the record the specific actions of the defendant, apart from the actions constituting the elements of the offense, clearly followed the preferred procedure. See, e.g., State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997). We agree with the trial court's determination that the facts in this case support the application of this factor. We also agree that this factor should be given significant weight.

Next, the trial court found that incarceration was necessarily appropriate in this case to avoid depreciating the seriousness of this offense. See Tenn. Code Ann. § 40-35-103(1)(B). In arriving

at a proper sentence and its manner of service, the sentencing court is entitled to inquire into the nature and circumstances of the criminal conduct involved. Tenn. Code Ann. § 40-35-210(b)(4); State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983). Indeed, the court may look behind a plea agreement and consider the true nature of the offense committed. See Hollingsworth, 647 S.W.2d at 939; State v. Biggs, 769 S.W.2d 506, 507 (Tenn. Crim. App. 1988); State v. Anderson, 1998 WL 599527, No. 02C01-9707-CR-00251 (Tenn. Crim. App., filed Sept. 11, 1998, at Jackson).

In the instant case, the facts indicated that the defendant went to the victim's home and beat the victim until he was unconscious, rendering him permanently injured. In addition, the trial court had before it medical records indicating how serious the victim's injuries were. This aggravated assault was very serious and the injuries that the defendant inflicted upon the victim were also very serious. Given the nature and circumstances of this offense, we agree that incarceration is necessary to avoid depreciating its seriousness.

We also note the trial court's finding that the defendant was less than candid with the court throughout his entire testimony. The trial not only discredited the defendant's claim that the victim was the aggressor in this case, but also found that the defendant was untruthful in his claim that the officer who responded to the vandalism told him that he could not get a warrant against the victim until Monday morning. This defendant's lack of credibility was clearly a factor that the trial court considered, and negatively reflected on his potential for rehabilitation. See, e.g., State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

Although we agree that the defendant was less than candid with the trial court, that the trial court properly applied the two enhancement factors, and that confinement was necessary to avoid depreciating the seriousness of this offense, the trial court made no specific findings, and we find no evidence in the record supporting the trial court's conclusion that confinement is necessary to provide an effective deterrence to others likely to commit similar offenses. See, e.g., State v. Hooper, 29 S.W.3d 1 (Tenn. 2000) (setting out several factors to consider in using deterrence as a requisite for incarceration). Nevertheless, given the significant weight of the other factors and evidence supporting the need for incarceration, we agree with the trial court's conclusion that the defendant should serve his four-year sentence in the Department of Correction.

### Conclusion

After review of the record before us, we hold that the evidence in the record supports the trial court's conclusion that the defendant should be denied an alternative sentence and should serve his four-year sentence in the Department of Correction. The judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE