# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 29, 2002

## STATE OF TENNESSEE v. RICKY LEE INSCORE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S45,095     R. Jerry Beck, Judge**

---

### No. E2002-01005-CCA-R3-CD
### December 18, 2002

---

The defendant, Ricky Lee Inscore, pled *nolo contendere* to aggravated burglary and sexual battery. The Sullivan County trial court sentenced the defendant to three years for aggravated burglary and two years for sexual battery as a Range I standard offender to be served concurrently in the Department of Correction. In this appeal of right, the defendant presents the issue of whether the trial court erred in denying him probation or alternative sentencing. After reviewing the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

David W. Tipton, Bristol, Tennessee, for the appellant, Ricky Lee Inscore.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

During the defendant's plea hearing, the parties stipulated the state's evidence to be the following:

> On February the 16th, of 2001, . . . after three o'clock in the morning, the defendant . . . went to the home of Jamie and Robert Hilliard . . . in Bristol, Tennessee. The defendant entered into the home without the permission of the Hilliards and went into the bedroom where Jamie Hilliard was asleep in bed. The defendant sat on the bed and began to rub Ms. Hilliard on her buttocks, as well as her chest area. Ms. Hilliard was awakened by the defendant's presence. At first, she thought it was her husband, then realizing that

her husband was still at work . . . immediately sat up and recognized the defendant, who she vaguely knew as . . . a coworker of her husband. . . . [T]he defendant had visited at the home of the couple on different occasions when her husband was there.

She . . . told the defendant to quit touching her, to leave her home. The defendant refused to leave her home. She got up; she put on some pajama pants and went over to her computer that she had left on when she had fallen asleep. The computer was still logged onto the internet into the America Online's Tri-City chat room and she began to type into the computer several requests for help.

The defendant briefly left the room, went and got a beer out of the refrigerator, as well as a drink for the victim, returned back to the computer where the victim, Mrs. Hilliard, was sitting and at that time continued to rub her in the chest area, as well as in the vaginal area.

The defendant kept asking the victim to have sex with him, kept telling the victim how much she would enjoy having sex with him. Mrs. Hilliard continuously told the victim no . . . and requested the defendant to leave her home, which he refused to do.

The defendant . . . grabbed the victim and forced her onto the bed where he proceeded to continue to fondle her in her vaginal area, as well as in her chest area. She continued to scream at the defendant to leave her home and told him that what he was doing she . . . considered to be rape. The defendant stated that he was not raping her because he had not had intercourse with her. The defendant then . . . left the home and went to his own home, which was approximately four houses up . . . from the victim's.

While this was going on, several people who were in the America Online's chat room, saw the victim's cries for help, contacted law enforcement and met law enforcement in the nearby area, . . . where they proceeded with law enforcement to the Hilliards' home.

Law enforcement, upon arriving at the Hilliards' home, found Jamie Hilliard to be extremely upset. She told the officers what had occurred. The officers, based on the information they received, went to the defendant's home, found the defendant. The defendant agreed to go to the police department for purposes of giving a statement.

The defendant went to the police department and after being advised of his constitutional rights per the <u>Miranda</u> decision and waiving those rights stated that he and his friend had been out drinking the evening before. . . . [T]hen had proceeded on to his home. . . .

As they passed the Hilliard home, he saw a light at the house. . . . He said he walked back to the house from his own home after he had parked his car, knocked on the door and nobody answered the door. He . . . admitted that he opened the door without permission, went into the bedroom where he found his friend's wife in bed. He asked her, are you asleep? She said, no. He proceeded to tell the police that she went to the computer and began typing something into the computer. He is not able to read very well, so he never picked up that they were cries for help coming from the victim. He admitted that he began rubbing her back while she was at the computer, that he began kissing her and that he began rubbing her in the breast area, . . . according to the defendant, she never did resist doing this. He continued rubbing her for awhile. He did admit that the victim had said several times that you'll have to rape me before I come to the bed or what you have done is considered rape, but he thought that the victim . . . was kidding.

He admitted that . . . he got worried about the situation when . . . the victim said for the second time that you have raped me. And at that point he went ahead and left the house and proceeded to his own home where he was arrested by police.

The defendant was charged with aggravated burglary and rape. Pursuant to a plea agreement, he entered a plea of *nolo contendere* to aggravated burglary and sexual battery. The trial court sentenced the defendant as a Range I standard offender to three years for aggravated burglary and two years for sexual battery to be served concurrently. The trial court also denied the defendant alternative sentencing and ordered his sentence to be served in the Department of Correction.

During the sentencing hearing, the trial court identified both favorable and unfavorable factors in determining the manner in which the defendant must serve his sentence. The trial court first noted Counseling and Consultation Services, Inc., examined the defendant and found he poses a moderate risk to reoffend. In addition, the trial court considered the defendant's prior criminal record and history of alcohol/drug abuse. The trial court found the defendant's employment history to be a positive factor. The trial court weighed both the positive and negative factors and denied the defendant alternative sentencing.

We conclude the trial court considered the sentencing principles and all relevant facts and circumstances in making its decision. Therefore, our standard of review is *de novo* with a presumption of correctness.

## STANDARD OF REVIEW

The defendant contends that the trial court erred in denying him alternative sentencing and ordering him to serve his sentence in the Department of Correction. We disagree.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

Under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations contained in Tennessee Code Annotated section 40-35-103(1):

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Grigsby, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); State v. Millsaps, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

A court's determination of whether the defendant is entitled to alternative sentencing requires a different inquiry from whether the defendant is entitled to full probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The state has the burden of overcoming the statutory presumption in favor of alternative sentencing where the defendant is entitled to such a presumption. *See* Tenn. Code Ann. § 40-35-102(6); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, the defendant has the burden of establishing suitability for total probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. Tenn. Code Ann. § 40-35-303(b); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995).

# ANALYSIS

In the case at bar, the first circumstance, "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," applies. *See* Tenn. Code Ann. § 40-35-103(1)(A). The defendant has a history of criminal misconduct, which includes four prior misdemeanor convictions. In addition, the evaluation report prepared by Counseling and Consultation Services, Inc., states the defendant poses a moderate risk to reoffend. The report further states that the defendant is considered a poor candidate for treatment.

In addition, confinement is necessary in order to avoid depreciating the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B). The defendant entered the victim's home without her permission and sexually touched her despite her objections, thus committing aggravated burglary, a Class C felony, and sexual battery, a Class E felony. *See* Tenn. Code Ann. §§ 39-13-505; -14-403. The facts and circumstances surrounding the commission of these offenses are particularly disturbing. It further appears from the evaluation report that the defendant had "no empathy for the victim" and considered himself the victim of false accusations.

Finally, measures less restrictive than confinement have been unsuccessfully applied to the defendant. *See* Tenn. Code Ann. § 40-35-103(1)(C). For each of the defendant's prior misdemeanor convictions, he was ordered to serve minimum jail time with the remainder of his sentences served on probation. However, despite these less restrictive measures, the defendant has continued to commit various criminal offenses.

Therefore, we conclude the trial court properly denied alternative sentencing. We affirm the judgments of the trial court.

_____
JOE G. RILEY, JUDGE