# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2003

## STATE OF TENNESSEE v. PHYLLIS HINES

### Direct Appeal from the Circuit Court for Sevier County
### No. 8900    Richard R. Vance, Judge

### No. E2002-02518-CCA-R3-CD
### July 23, 2003

The defendant, Phyllis Hines, pled guilty to two counts of simple assault, a Class A misdemeanor. The Sevier County trial court imposed consecutive sentences of eleven months and twenty-nine days for each count of assault. It then ordered the defendant to serve the first eleven-month and twenty-nine-day sentence at 75% in confinement followed by probation. On appeal, the defendant contends the trial court erred in imposing confinement. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Edward Cantrell Miller, District Public Defender; and Micaela Burnham, Assistant District Public Defender, for the appellant, Phyllis Hines.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty to two counts of simple assault by bodily injury, a Class A misdemeanor. *See* Tenn. Code Ann. § 39-13-101(a)(1), (b). The stipulated facts during the guilty plea hearing reveal that on March 1, 2001, the defendant physically assaulted and caused bodily injury to Margaret Yett, an elderly lady, while the defendant was employed as her caregiver, thus forming the basis for the first count of assault. Furthermore, on January 28, 2002, the defendant assaulted and injured Iris Newman, an elderly lady, while employed as her caregiver, thus forming the basis for the second count of assault.

As part of her plea agreement, the defendant consented to an eleven-month, twenty-nine-day sentence for each count with the manner of service to be determined by the trial court. Upon conducting a sentencing hearing, the trial court ordered the two sentences to run consecutively with

the defendant serving eleven months and twenty-nine days at 75% in confinement and the remainder of the sentence on probation.

## I. SENTENCING HEARING

Terri Newman testified that Iris Newman was her husband's seventy-six-year-old grandmother, who had since died. Ms. Newman suffered from vascular dementia, the beginning stages of Alzheimer's disease, and depression, and she was unable to speak clearly as a result of a series of strokes. Terri Newman testified her family employed the defendant as a caregiver for the victim in April 2001. The victim was unable to communicate clearly and became increasingly agitated toward the defendant.

Terri Newman testified she first noticed bruising on the victim while she was giving her a bath, a task which was generally performed by the defendant. Terri Newman stated she observed bruises in the middle of the victim's back, "pinching marks" underneath her arms, and bruises on her feet which looked "as if they were stomped," and that the victim's head was sore. When Terri Newman questioned the defendant about the injuries, the defendant explained that the victim had fallen. Terri Newman testified the victim also suffered from osteoporosis, and if she had fallen, she would have broken a bone.

Terri Newman testified she and her husband placed video and audio equipment in the victim's home; however, the video equipment was never fully installed. Terri Newman stated that an audio tape, which was recorded while the defendant was giving the victim a bath, revealed the defendant's yelling at the victim as if she were "mocking and mimicking her." The defendant told the victim that she hated her, her house, and the job. When the victim yelled for help, the defendant threatened to call Terri Newman. Terri Newman testified she then heard "smacking" and "hitting" followed by the victim's "wailing." Terri Newman confronted the defendant with the audiotape the next day.

Katherine May testified she is a general manager at a hotel at which the defendant was then employed. She described the defendant as dependable and a good worker. She further stated she did not know the defendant when the offenses occurred.

Henrietta Sharp testified she has been friends with the defendant for many years. She stated she worked with the defendant from 1976 until 1979 in a nursing home caring for elderly people, and she never observed the defendant strike a patient.

The defendant testified she attended anger management classes and learned from them. She expressed her willingness to attend a more intense form of counseling. The defendant testified she has a son who is mentally challenged. He is able to live alone but suffers from severe panic attacks. He is also unable to work and receives social security. The defendant was also supporting her daughter and two grandchildren, which increased her stress level.

The defendant expressed remorse regarding her actions. She stated Ms. Newman was aggressive toward her, but she should have reacted in a different manner. The defendant further stated that although she should not have hit Ms. Newman, she was defending herself. The defendant

-2-

testified she told the police that she "slapped" Ms. Newman in the back of her head. She denied discussing with the Newmans how Ms. Newman's bruising occurred.

The defendant testified she was also a caregiver to Margaret Yett, who was in her eighties and suffered from either dementia or Alzheimer's disease. Although the defendant admitted she told the police she had a physical altercation with Ms. Yett, she testified she did not recall ever experiencing any problems with Ms. Yett. She further testified she spoke loudly to Ms. Yett because the victim could not hear well. The defendant did not recall informing the police that she "might have" hit Ms. Yett.

The defendant stated she did not yell at the two victims "that much."

During closing arguments at the sentencing hearing, defense counsel requested the trial court impose consecutive sentences to be served on probation.

## II. TRIAL COURT'S FINDINGS

The trial court stated that in sentencing the defendant, it considered the presentence report, victim impact statements, testimony and other evidence presented during the sentencing hearing and plea hearing, and the arguments of counsel. The trial court further stated that although it had wide discretion in imposing sentences for misdemeanors, it would use the sentencing principles employed in felony cases as a guide.

The trial court found that each offense warranted an eleven-month, twenty-nine-day sentence. It based its ruling upon the defendant's plea and the circumstances of the offenses. The trial court noted the defendant had no previous history of criminal conduct. The trial court stated the defendant abused a position of private trust, and the victims were particularly vulnerable due to their ages or physical or mental disabilities. It further stated the defendant expressed remorse while defending her actions, which were "indefensible."

The trial court then found that confinement was necessary to avoid depreciating the seriousness of the offenses and denied total probation. It stated the circumstances of the offenses were so "shocking" as to require confinement. In making this finding, the trial court considered the severity of the offenses, the vulnerability of the victims, and the fact that they were abused on more than one occasion. The trial court stated that although the defendant may have been experiencing difficulties in her life, she vented her frustrations on two "helpless" victims. The trial court further stated the defendant was attending anger management courses and was gainfully employed.

The trial court ordered 75% of the first eleven-month, twenty-nine-day sentence to be served in confinement followed by probation. As conditions of probation, the defendant was required to attend counseling and was prohibited from serving as a caregiver.

## III. STANDARD OF REVIEW

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission

Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

In sentencing the defendant, the trial court stated it considered the presentence report, testimony and other evidence presented at both the plea hearing and sentencing hearing, and arguments by counsel. The trial court also referred to the sentencing principles throughout its findings. Therefore, our review in this case is *de novo* with a presumption that the trial court's determinations are correct.

## IV. MISDEMEANOR SENTENCING

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. State v. Palmer, 902 S.W.2d 391, 394 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Tenn. Code Ann. § 40-35-302(d). In determining the percentage of the sentence, the trial court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. *Id.*

Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. State v. Humphreys, 70 S.W.3d 752, 768 (Tenn. Crim. App. 2001).

Under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations contained in Tennessee Code Annotated section 40-35-103(1):

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Grigsby, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); State v. Millsaps, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

# V. ANALYSIS

We first note that the defendant originally filed a statement of the evidence rather than the written transcripts of the hearings. However, when the statement of the evidence was filed, there was no proof of service on the District Attorney General. Furthermore, upon reviewing the record on appeal, we opined that the statement of the evidence failed to set forth the sentencing hearing proceedings with such specificity as to permit us to conduct a proper review of the issue on appeal. We then remanded the case to the trial court in order to secure written transcripts of the proceedings. The record in this case is now sufficient to permit us to conduct a thorough review of the issue presented on appeal.

The defendant first contends the trial court erred in applying as an enhancement factor that the offenses were committed under circumstances in which the potential for injury was great. *See* Tenn. Code Ann. § 40-35-114(7) (2002). In its findings, the trial court mentioned this enhancement factor. However, it further recognized that this factor was embodied in the assault offenses and declined to give the factor weight.

The defendant further contends the trial court failed to consider as mitigating factors her participation in anger management courses and counseling prior to the sentencing hearing, her age and physical condition, and her mental health at the time the offenses occurred. However, the record reveals that the trial court considered her presentence report, which noted that the defendant was sixty-one years old and suffered from high blood pressure. The trial court further noted that the defendant was attending anger management classes and was gainfully employed. Finally, the trial court stated that although the defendant was under a great deal of stress when the offenses occurred, she chose to vent her frustrations on two "helpless" victims. The record reflects that the trial court fully considered these circumstances in sentencing the defendant.

The trial court also found that confinement was necessary in order to avoid depreciating the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B). Probation may be denied based solely upon the circumstances surrounding the offenses. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). However, the circumstances of the offenses as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offenses must outweigh all factors favoring probation. Hartley, 818 S.W.2d at 374-75. The trial court found that the circumstances were so "shocking" as to require confinement. We agree. The defendant was entrusted by the victims' families to care for the victims; the defendant abused the victims on more than one occasion; and the victims were unable to defend themselves due to their ages and various medical problems. We conclude the trial court did not abuse its discretion in imposing confinement. Accordingly, we affirm the judgments of the trial court.

_____

JOE G. RILEY, JUDGE

-5-