IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2003

**STATE OF TENNESSEE v. DEWAYNE CHAMBERS**

**Direct Appeal from the Circuit Court for Robertson County**
**No. 97-0337     John H. Gasaway, III, Judge**

---

**No. M2002-01858-CCA-R3-CD - Filed September 2, 2003**

---

A Robertson County jury convicted the defendant, Dewayne Chambers,[1] of kidnapping and rape. The trial court imposed concurrent sentences of three years for the kidnapping conviction and eight years for the rape conviction to be served in the Department of Correction.  On appeal, the defendant contends the trial court erred in denying alternative sentencing.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Roger Eric Nell, District Public Defender; and Russel A. Church, Assistant District Public Defender, for the appellant, Dewayne Chambers.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and B. Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Although sufficiency of the evidence is not an issue on appeal, we will relate certain facts in order to place the issue of sentencing in proper prospective.  C.K.,[2] the seventeen-year-old victim, testified that on June 12, 1997, at approximately 10:00 p.m., while walking from her friend's residence toward her home, she observed the defendant and codefendant Jason Chambers at a stop sign in a

---

[1]In various pleadings, the defendant's name also appears as "Robert Dewayne Chambers."  However, our policy is to use the defendant's name as it appears in the indictment.

[2]It is this court's policy not to reveal the names of minor victims of sexual offenses.

gray Oldsmobile Cutlass.[3] She did not recognize the defendant, who had a tattoo on his neck that said "Yella" and who identified himself as "Eric Hines," but recognized the codefendant as a former school classmate.

When the victim declined the two men's offer for a ride, the defendant exited the vehicle, grabbed the victim by the waist, and pulled her in the backseat of the vehicle. The defendant then ordered the victim to lie down, and she complied. The victim testified they drove to a baseball park which had a concession stand and bleachers. They drove up a steep, grassy hill and parked behind the concession stand.

The victim testified that throughout the trip, she pled with the two men to let her go; however, they denied her requests. The victim stated that upon stopping the vehicle, the codefendant climbed into the backseat and attempted to force her to engage in fellatio and further attempted vaginal penetration. Neither was consummated. The codefendant told the defendant, who was sitting in the front seat, "I can't do nothing with this bitch, so you come do what you got to do." The victim testified the defendant then climbed into the backseat of the vehicle, penetrated her vaginally, and ejaculated. She stated that she continuously screamed at the men to get off of her and attempted to push them away from her.

The codefendant drove the vehicle away from the park and stopped in a parking lot located a short distance from the park. The codefendant then ordered the victim to exit the vehicle and get in the front seat. When the victim exited the vehicle, they drove away.

Deputy Charles J. Campbell of the Robertson County Sheriff's Department testified that at approximately 10:30 p.m. on June 12, 1997, while traveling on Highway 431, he observed the victim standing on the side of the road waving. When he stopped, the victim ran toward his vehicle and then "collapsed." Deputy Campbell described the victim's condition as "[i]n shock" and "[v]ery distressful." The victim was "[c]rying, upset, just could not focus." A Springfield police officer arrived and transported the victim to Northcrest Hospital for evaluation.

Dr. Sharon Horton-Jenkins, a forensic serologist for the Tennessee Bureau of Investigation, testified she conducted a DNA analysis of the evidence collected from the victim and concluded that the DNA profile of the sperm found on the victim's underwear matched the defendant.

The codefendant testified the victim approached them; she requested a ride; she entered the backseat of the vehicle before either of the men could respond; and the defendant and codefendant engaged in consensual sexual activity with the victim. The codefendant testified the victim exited the vehicle in order to dress. The codefendant stated that as a joke, he and the defendant drove away leaving the victim.

The defendant did not testify at trial.

---

[3]The defendant and the codefendant were tried together; however, only the defendant's convictions are at issue in this appeal.

The defendant was charged with aggravated kidnapping and aggravated rape. The jury convicted him of the lesser-included offenses of kidnapping and rape.[4] See Tenn. Code Ann. §§ 39-13-303(a), -503(a). The sole issue in this appeal is whether the trial court erred in denying alternative sentencing.

At the defendant's sentencing hearing, Kristy Humber testified she is the defendant's former girlfriend and has a daughter with him. She described the defendant as a good father who has a strong relationship with their daughter. Humber further testified she is currently involved in child support proceedings against the defendant.

The defendant testified he was convicted of misdemeanor theft in April 1996 for a "gas run-off." In December 1996, the defendant was convicted of reckless driving and received a suspended sentence. The defendant admitted he was on probation for the reckless driving conviction when the present offenses occurred.

The defendant testified he dropped out of high school because he had an attendance problem, but he had obtained a GED. He stated he was employed at CEI for three years but was fired as a result of attendance problems. He then worked at TriCo, a factory, for one and one-half days but lost that job because one of the employees had served on the jury at his trial. The defendant admitted he failed to disclose the present felony convictions on his employment application.

The defendant maintained he engaged in consensual intercourse with the victim. He further stated he believed he could comply with the terms of probation.

## ANALYSIS

### I. Trial Court's Findings

The trial court found the defendant to be a Range I, standard offender whose range of punishment was three to six years for the Class C felony kidnapping conviction and eight to twelve years for the Class B felony rape conviction. See Tenn. Code Ann. § 40-35-112(a)(2), (3).

The trial court found the defendant had a previous history of criminal convictions; the defendant was a leader in the commission of the offenses; and the rape was committed to gratify the defendant's desire for pleasure or excitement. See id. § 40-35-114(1), (2), (7) (1997).[5] The trial

---

[4] The codefendant was convicted of kidnapping, attempted rape, and sexual battery. The trial court merged the sexual battery conviction into the attempted rape conviction and imposed an effective sentence of five years incarceration.

[5] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

court then applied mitigating factor (1), "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury," to both convictions. Id. § 40-35-113(1). The trial court sentenced the defendant to the minimum terms of three years for kidnapping and eight years for rape and ordered that the sentences run concurrently.

The trial court found that because the defendant received an eight-year sentence, he was eligible for probation pursuant to Tennessee Code Annotated section 40-35-303. The trial court characterized the offenses as "very serious" in that "[t]he victim . . . was snatched off the street, manhandled by two men, forced to submit to unwanted sexual activity[,] and then discarded on the side of the road." Based upon these circumstances, the trial court ordered the defendant to serve his sentence in confinement.

## II. Standard of Review

A defendant's sentence is reviewed by the appellate courts *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

The defendant contends our standard of review should be *de novo* without a presumption of correctness because the trial court misstated specific facts in reviewing the two versions of the events which were presented at trial. However, upon reviewing the record, we conclude the trial court properly considered all relevant facts and circumstances, and thoroughly discussed all applicable sentencing principles. Therefore, our standard of review is *de novo* with a presumption that the trial court's determinations were correct.

## III. Alternative Sentencing

### A. Statutory Standards

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Id. § 40-35-303(a).

Probation may be denied based solely upon the circumstances surrounding the offense. State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. Id. at 374-75.

Under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations contained in Tennessee Code Annotated section 40-35-103(1):

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

State v. Grigsby, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); State v. Millsaps, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

## B. Analysis

Because the defendant was convicted of rape, a Class B felony, he was not presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). The defendant was also ineligible for community corrections consideration because both of his convictions involved crimes against the person. See id. § 40-36-106(a)(2). Furthermore, the evidence presented at the sentencing hearing failed to establish the defendant's eligibility for community corrections under the special needs provision. See id. § 40-36-106(c). However, the trial court properly concluded the defendant, who received an effective eight-year sentence, was eligible for probation. See id. § 40-35-303(a).

The trial court denied probation based primarily upon the circumstances of the offenses. According to the evidence presented at trial, the defendant forced the victim inside his vehicle; the defendant and codefendant drove her to a park; the defendant forced the victim to engage in sexual intercourse after the codefendant had unsuccessfully attempted to force her to engage in various sexual acts; and they then abandoned the victim on the side of a highway. We conclude the circumstances of the offenses were sufficiently shocking and reprehensible to justify the denial of probation and the imposition of confinement. See Hartley, 818 S.W.2d at 374-75. We further note the trial court found the defendant's version of the events untruthful. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999) (holding lack of candor reflects poorly on rehabilitation prospects). In addition, the defendant had two prior convictions and committed the present offenses while on probation. See Tenn. Code Ann. § 40-35-103(1)(A), (C) (listing prior criminal conduct and prior unsuccessful alternative sentences as relevant to confinement determinations). The trial court had ample bases to deny alternative sentencing.

Accordingly, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE