# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 24, 2006 Session

## STATE OF TENNESSEE v. MICHAEL RAY CARLTON

**Direct Appeal from the Circuit Court for Blount County**
**No. C-14794     D. Kelly Thomas, Judge**

---

**No. E2006-00294-CCA-R3-CD - Filed August 8, 2007**

---

The defendant, Michael Ray Carlton, was convicted of theft over $60,000 (Class B felony) and sentenced to eight years as a Range I, standard offender. The defendant now appeals his conviction and sentencing and presents the following issues: (1) the evidence was insufficient to support the conviction; (2) the trial court erred in its jury instruction regarding accomplice corroboration; (3) the trial court committed plain error in allowing certain testimony and in allowing improper comments in closing argument; and (4) the trial court erred in sentencing by its order of incarceration. After review, we affirm the conviction but modify the manner of service of sentence to serve six months in the local jail or workhouse, with eligibility for work release if available, followed by supervised probation for the remainder of his sentence. We remand to the trial court for the determination and setting of restitution payments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part;**
**Modified in Part; Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., joined.

David M. Eldridge, Knoxville, Tennessee, for the appellant, Michael Ray Carlton.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Rocky H. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was charged in a two-count presentment of theft over $60,000 from Clayton Homes, Inc., d/b/a CMH Parks, Inc. and one count of forgery. At the conclusion of the State's proof, the trial court granted the defendant's motion for judgment of acquittal as to the forgery count, pursuant to Rule 29(a), Tennessee Rules of Criminal Procedure. A jury returned a guilty verdict as

to the theft count. The defendant was sentenced to eight years of incarceration. The defendant now appeals his conviction and sentence.

## Summary of Evidence

The defendant was employed as a project manager for Clayton Homes, Inc., d/b/a CMH Parks, Inc. (CMH). His duties were to oversee the development of property for establishing mobile home parks. The defendant was charged with theft over $60,000 from CMH during the period from March 9, 2000, to January 11, 2001. Two projects under the defendant's oversight were at issue: South Shore, a new development in Antioch, Tennessee, of an upscale mobile home subdivision and Farragut Park, an expansion project of an existing park in Knoxville. As a project manager, the defendant was responsible for numerous tasks, including: participation in the budget process and capital authorization requests, obtaining necessary zoning and permit approvals, hiring contractors or vendors to perform services and work on site, general supervision, and approval of contractors' (vendors') invoices. The State contended that the defendant committed theft by approving and submitting inflated invoices and by retaining an unauthorized share of the funds paid on behalf of the submitting parties.

Richard Keith Green was the controller for CMH and was responsible for the supervision of the company's accounts payable and receivable. He explained the phases that a project customarily undergoes. At the outset, a budget is formulated and then, if approved by the project manager, a more specific outline of costs is compiled, which constitutes a Capital Acquisition Request (CAR). If approved by senior management, contractors are hired to begin work. The project manager is responsible for submitting a check request to pay invoices submitted by contractors.

Documents relating to Farragut Park were introduced through Mr. Green. One exhibit showed that the total paid to Ernest Fox, an excavating contractor, was $188,340.50, for work at Farragut Park. Fox's wife, Letitia Fox, who also served as his bookkeeper, submitted "real" invoices as opposed to the actual invoices the defendant had submitted to CMH for payment. The total of the "real" invoices was $152,385. Mr. Green also testified that Mr. Fox had called during February 2001, stating that the IRS 1099 form sent to him by CMH exceeded the payments he had received.

Also introduced by Mr. Green was a summary showing that two checks, totaling $10,110, were issued to Fox for work at Antioch. Green also introduced a summary of checks paid to Roy Jones, a real estate agent, for work at Antioch. The total amount paid to Jones was $109,432. Green testified that a proposal for Jones' work at Antioch was received at CMH in January of 2001, although it was purportedly signed by Jones on May 5, 2000, and by the defendant on May 8, 2000.

Letitia Fox, the wife of Ernest Fox, testified that she served as the bookkeeper for Mr. Fox's business, Fox Excavating. She said the invoices were based on the hours furnished to her by her husband. She said that, at the defendant's request, she had inflated the amount due on at least two invoices. Mrs. Fox also kept invoices that she said accurately reflected the work actually performed. She identified other invoices she submitted to the defendant, which were subsequently inflated prior

to transmittal to CMH. Fox Excavating received a 1099 form from CMH for the year 2000 which, according to Mrs. Fox, exceeded their actual payment received by approximately $38,000. Some invoices she sent to the defendant were submitted to CMH with handwritten notations that inflated the amount due. Mrs. Fox said that Mr. Fox had a second grade literacy level and did not write.

Mrs. Fox stated that in January of 2001, the defendant asked her to prepare invoices for a Miller Trucking Company on the Antioch project. She complied, although she had never heard of Miller Trucking and although Fox Excavating received no funds from the invoices. Mr. and Mrs. Fox did receive a 1099 form for Miller Trucking from Roy Jones that reflected payment of $61,806.

On cross-examination, Mrs. Fox said she received only one 1099 from CMH for the year 2000 and paid the taxes on the $38,000 overage reflected on the form. She stated that she had stopped inflating the invoices for the defendant in March of 2000 but, nevertheless, agreed to provide false invoices for Miller Trucking in January of 2001 because she felt sorry for the defendant.

Ernest Fox testified that he had known the defendant for fifteen to twenty years. Mr. Fox stated he had been assured by the State prosecutor that he would not face criminal charges concerning his involvement in this theft charge. He stated that, during his work at the Farragut project, he submitted his weekly invoice to the defendant on Thursdays. The defendant would have Fox's check on Friday and then accompany Fox to a bank where Fox would cash the check and give the defendant the money exceeding the amount due Fox. Mr. Fox recalled receiving a 1099 form on Miller Trucking in the amount of $61,000 from Roy Jones. Fox said he had not received any of these funds and asked the defendant about the 1099 form. The defendant advised Fox to tear up the tax form. Fox's work at Antioch was over a two-week or three-week period. During that time, he was paid in cash by Roy Jones.

Roy L. Jones testified that, in addition to being a real estate agent, he had experience in doing estimates for a concrete company and in assisting developers obtain zoning approvals. He had known the defendant since 1998 and had attempted unsuccessfully to secure some properties for CMH prior to CMH's purchase of the Antioch property. Jones negotiated an easement to the development in Antioch.

An exhibit was introduced showing a summary of eighteen checks issued to Jones from CMH. Also, within the exhibit were the respective invoices for each payment signed by Jones, the request for payment signed by the defendant, and a copy of each check for payment. The total paid to Jones was $109,432. The first check, in the amount of $1500, was payment for Jones' work on negotiating the easement. Jones stated he received all of this check. The remaining checks included services such as engineering consulting, actual development, clearing, and hydrology. Jones stated that neither he nor his agents performed any of these tasks. Jones was told by the defendant to prepare the invoices, which Jones did and then sent them to the defendant. When the check arrived, the defendant met Jones at a bank where Jones would cash the check and then give the money to the defendant. The defendant would pay Jones cash from each check's proceeds.

Jones identified a contract proposal to CMH for the first phase of development of the park at Antioch, signed by Jones and the defendant, and dated May 5, 2000, and May 8, 2000, respectively. Jones said he actually signed the proposal in January 2001 but dated it according to the defendant's instructions.

The defendant informed Jones in January 2001 that all work would be stopped on the Antioch project and that an audit was to be performed by CMH. The defendant prepared a spreadsheet which Jones typed. It purported to show the funds received by Jones, the defendant, and Miller Trucking on the Antioch project. According to Jones, it was artificially constructed to show that the defendant received approximately $20,000. The total on the spreadsheet reflected $19,700 paid to the defendant. In January of 2001, the defendant asked Jones to lend him $20,000. Jones refused the request, and the defendant instructed him to tell anyone who asked that the defendant kept $20,000 from the proceeds. Jones estimated that the defendant actually received approximately $70,000. Jones said that he never paid anyone money on behalf of Miller Trucking. Jones later prepared what he said reflected the actual amounts he received and those kept by the defendant. This document showed that Jones received $26,189 and that the defendant received $77,842.

Jones said he last met the defendant in Nashville in the parking lot of a restaurant. The purpose was to pay the defendant from a check Jones had received. Jones could not recall the exact amount paid to the defendant at that time but said that the funds were in an envelope. The transaction occurred on or about January 4, 2001.

In 2000, Gail Tipton Chambers was a manager of accounts payable and receivable at CMH. She began dating the defendant in June of 2000. She testified that she had accompanied the defendant on trips to Nashville and had met Roy Jones approximately five times. On January 5, 2001, she went to Nashville with the defendant to attend a Titans game. She had prepared a check payable to Roy Jones for "about $7800," which she gave to the defendant. The defendant met with Jones on two occasions that date: the first to deliver the check and again, ostensibly, for Jones to sign some zoning papers. At the second meeting, she accompanied the defendant to the parking lot of a restaurant where Jones handed the defendant an envelope. Later, Mrs. Chambers saw $4000 in cash as well as some one-hundred-dollar bills in the defendant's suitcase. She stated that she had seen his wallet and that he had no cash when they left Knoxville. On the following Monday, she reported these events to Jim Clayton, the president of CMH.

Carlton Bryant, an attorney and investigator for the Knox County Sheriff's Office, testified that he interviewed the defendant on January 29, 2001. The audiotape of the interview was played for the jury. During the interview, the defendant denied receiving any money from Ernie Fox. The defendant told Mr. Bryant that, while he was going through a divorce, he ran out of cash and borrowed money from Roy Jones ten or twelve times. He stated that the total amount borrowed from Jones was approximately $19,000 and that he had signed several promissory notes in favor of Jones. The defendant said he last received money from Jones in December of 2000, when he met Jones at a restaurant parking lot in Nashville and received about $4000 in an envelope.

After the State rested, the trial court granted the defendant's Rule 29 motion to dismiss count one of the presentment, a forgery charge.

The defendant testified in his own defense. He stated that he had no conflicts with the data contained in the exhibit introduced by the CMH controller, Keith Green. He explained that he was often not available to inspect every job project on a daily basis. He said that he reviewed the budgets with his supervisors regularly and that his work had not previously been questioned.

The defendant stated that he had known Ernest Fox for approximately twelve years. He denied ever taking money from Fox and also denied telling Mr. or Mrs. Fox how much to charge on invoices.

The defendant stated that Roy Jones had assisted him in the past on projects for which Jones never received payment. The defendant had assured Jones that, if a CMH project in which Jones was involved came to fruition, Jones would then be compensated for his past efforts. When the project at Antioch was commenced, money was budgeted to Jones as "soft cost or allowance." Jones did not perform the physical work, but he met with engineers and planning commissions and performed other tasks. According to the defendant, Jones would ask for a draw after explaining what he had been doing and the defendant would tell Jones how to attribute the invoice. The defendant said that Jones offered him financial loans when additional funds were needed by the defendant. Jones gave him money at various times, but the defendant did not keep up with the amount, although he believed the total to be approximately $20,000. The defendant admitted receiving money from Jones in an envelope in January of 2001.

## Sufficiency

In his first issue, the defendant attacks the sufficiency of the evidence as inadequate to support the conviction. When reviewing the sufficiency of the convicting evidence, an appellate court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). An appellate court does not reweigh or re-evaluate the evidence and may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. If the value of the property obtained is more than $60,000, the theft is a Class B felony. T.C.A. § 39-14-105(5).

Specifically, the defendant contends that the evidence was insufficient because it was based solely on accomplices' testimony without independent corroboration. The defendant argues that the evidence of the accomplices, Ernest and Letitia Fox and Roy Jones, was the sole basis for his conviction and was not corroborated by independent evidence.

In Tennessee, the uncorroborated testimony of an accomplice will not support a conviction. State v. Stout, 46 S.W.3d 689, 696 (Tenn. 2001). The nature and extent of this corroboration have been repeatedly described as follows:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 994) (citation omitted). Whether sufficient corroboration has been established is a determination for the jury. Id. at 803.

Richard Keith Green, the controller for CMH, testified to and produced documentation of the amounts paid to Ernest Fox based on approvals for payment submitted by the defendant on the Farragut Park project. The total paid to Fox exceeded what Fox claimed was his actual invoice total by approximately $36,000. Green also confirmed that he received a phone call from Fox complaining of an excessive amount shown on the 1099 form sent him by CMH. Also included in the documents presented by Green were check requests submitted by the defendant. Some of these check requests contained handwritten notations which increased the original invoice. Letitia Fox, the bookkeeper for Fox Excavating, later testified that these notations were not made by her or her husband and that they were in excess of their requested payment amount.

Green testified that CMH had paid Roy Jones a total of $109,432 for the Antioch project. It is a fair inference that this was an excessive fee for the only work Jones performed, negotiating an easement and attending zoning meetings. Green also confirmed that he did not receive the contract for Jones' services at Antioch until after an investigation of the defendant had begun. The contract bore signature dates in May 2000, but was only sent to CMH in January 2001. This gave support to Jones' testimony that the defendant attempted to reconstruct the financial trail regarding the Antioch project.

Gail Tipton Chambers corroborated the transfer of an envelope to the defendant by Roy Jones in January 2001. Soon after this, she found more than $4000 in the defendant's suitcase. These

events could have completely innocuous purposes but for the context of Roy Jones' testimony that he delivered this amount to the defendant that weekend. The defendant himself admitted that he received the money, although he characterized it as a loan.

The testimony of Green gave perspective to the defendant's methods. In particular, the documents introduced through Green supported and/or confirmed the allegations of the accomplices. The non-accomplice corroborating testimony, combined with the damning testimony of the accomplices, provides ample support for the defendant's conviction.

Jury Instruction

In his second issue, the defendant argues the trial court erred in failing to clearly instruct the jury that accomplices cannot corroborate each other. The State contends that the defendant waived the issue by failing to submit a special request or to object at the time the instructions were given.

"A defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). A charge that fails to fairly submit the legal issues or that misleads the jury as to the applicable law is prejudicially erroneous. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). Tennessee Rule of Criminal Procedure 30(b) provides that the parties are to be given an opportunity to object to the content of jury instructions or the failure to give requested instructions; however, the failure to make objections in these instances does not prohibit their being used as grounds in a motion for new trial. State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996). However, alleged omissions in the jury charge must be called to the trial judge's attention or be regarded as waived. State v. Haynes, 790 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986).

In this case, the defendant requested that the judge instruct on accomplice testimony and also that Roy Jones, Ernest Fox, and Letitia Fox be found as accomplices as a matter of law. The trial judge gave the following instructions concerning accomplice testimony:

> An accomplice is a person who joins another in committing a crime. The accomplice must do so knowingly, voluntarily, and sharing the intent of the other person in doing the crime. In this case, the Court charges you that the witnesses, Roy Jones, Tish Fox, and Ernie Fox were accomplices in the alleged crime. The testimony of an accomplice, by itself, cannot convict the Defendant. The accomplice's testimony must be supported by other evidence. This other evidence must independently lead to the conclusion that a crime was committed and that the Defendant was involved in it. This other supporting evidence must connect the Defendant to the crime. The supporting evidence may be direct or circumstantial, and it need not be sufficient by itself to justify a conviction. The supporting evidence is enough, if it fairly and legitimately tends to connect the Defendant with the crime charged. It is for you, the Jury, to decide whether an accomplice's testimony has been sufficiently supported by the evidence.

The defendant did not object or request any further clarification of the instructions. The defendant did include this issue in his motion for new trial. The instruction, as given, was accurate, and the defendant does not contend otherwise, only that the instruction should have contained further clarifications.

Our supreme court, in State v. Robinson, 146 S.W.3d 469 (Tenn. 2004), dealt with practically the same issue. The defendant in Robinson alleged error in the failure to instruct that an accomplice cannot provide corroboration for another accomplice, although the defendant had not made a special request for this instruction or objected to the instruction contemporaneously. The Robinson court stated that the instruction, as given, was accurate and that the failure to call an alleged omission to the trial court's attention constituted waiver. Robinson, 146 S.W.3d at 509.

The defendant urges this court to review this issue as plain error. We conclude that the alleged error herein is not "plain error" or "fundamental error" as recognized under Tennessee Rule of Criminal Procedure 52(b). State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). There are five factors which must be present to determine if "plain error" exists:
  (a)    the record must clearly establish what occurred in the trial court;
  (b)    a clear and unequivocal rule of law must have been breached;
  (c)    a substantial right of the accused must have been adversely affected;
  (d)    the accused did not waive the issue for tactical reasons; and
  (e)    consideration of the error is "necessary to do substantial justice."
State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (citing Adkisson, 899 S.W.2d at 641-42).

An instruction on the necessity of corroborating accomplices' testimony is not fundamental. State v. Bough, 152 S.W.3d 453, 464 (Tenn. 2004). The defendant has failed to demonstrate the existence of plain error on this issue, and relief is not available.

Prosecutorial Misconduct

The defendant next contends that the trial court committed plain error in (1) permitting the State to elicit testimony of uncharged misconduct, and (2) permitting improper comments by the State in closing argument.

The testimony the defendant contends was improperly admitted was elicited from Sandra Gail Chambers as follows:
  Q:    Did he ever make any statements to you dealing with whether or not he was trying to hide money from his ex-wife?
  A:    He had made the comment – he was in the process of building a condo. And he had made the comment that he had indicated to his wife that I was helping him finance the condo that he was building.

The defendant made no contemporaneous objection to the testimony. The failure to make a contemporaneous objection to testimony serves to waive appellate consideration of the issue. State v. Adler, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001); see Tenn. R. App. P. 36(b).

The defendant urges this court to consider the issue under plain error because of the "unfair prejudice" inflicted on the defendant by Mrs. Chambers' testimony. We decline to do so. The defendant has failed to show that a clear and unequivocal rule of law has been breached as required to find plain error. Smith, 24 S.W.3d at 282. The admission of evidence is largely discretionary, and the trial court's discretion will not be disturbed on appeal in the absence of clear abuse. State v. Robertson, 130 S.W.3d 842, 856 (Tenn. Crim. App. 2003). Any alleged "plain error must be of such great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642. The ambiguous testimony which is the basis of this issue was highly unlikely to have such a profound effect. We conclude that "plain error" is not present.

### Closing Argument

The defendant asserts that the trial court erred in permitting the prosecutor to improperly comment on the defendant's credibility during closing argument. The specific comment by the prosecutor was: "It wasn't believable to me, to believe what his client would ask you to believe." The remark was made without objection but was included as an issue in the defendant's motion for new trial. The defendant acknowledges that Tennessee Rule of Appellate Procedure 36(a) poses an obstacle to appellate review based on the defendant's waiver by failure to object. However, the defendant urges this court to utilize its discretion to consider the alleged error as "plain error."

We note initially that the prosecutor's statement was improper. A lawyer should not assert a personal opinion concerning the credibility of a witness. State v. Henley, 774 S.W.2d 908, 911 (Tenn. 1989). The factors to be considered in reviewing alleged prosecutorial misconduct are: the intent of the prosecutor, the curative measures undertaken by the court, the improper conduct viewed in context and in light of the facts of the case, the cumulative effect of the remarks with any errors in the record, and the relative strength or weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). In order to obtain relief, the appellant is required to show that the argument or the conduct was so egregious that it affected the verdict to his detriment. State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996).

After review of the record in light of the Judge factors, we conclude that the improper comment was not significant enough to affect the jury's verdict. The trial judge instructed the jury that arguments of counsel are not evidence. We do not discern this as "plain error" and, accordingly, we decline to grant relief.

### Sentencing

In his last issue, the defendant contends that the trial court erred in its refusal to sentence the defendant to probation. The State maintains the defendant failed to demonstrate his entitlement to probation.

Evidence presented at the defendant's sentencing hearing consisted of the presentence report, the testimony of witnesses, a statement by the defendant, the letters filed on the defendant's behalf, and the argument of counsel. The presentence report showed that the defendant was forty-five years old at the time of sentencing. He was divorced and the father of two children. The defendant had no history of criminal convictions except for a driving on suspended license which was resolved by payment of a ten-dollar fine. The defendant's most recent employer, an insurance company, had terminated the defendant's employment after his conviction due to company policy requirements. However, the company then hired him as a private consultant, and he was still working in that capacity at the time of the sentencing hearing.

The ex-wife of the defendant gave glowing testimony as to the defendant's parental involvement with their teenage daughters. She stated that he had enabled the daughters to continue attending their private school. She said that his former child support payments had been paid "like clockwork" but had recently been less than his full obligation. She also affirmed that the defendant remained fully engaged in his parenting responsibilities and maintained a very close relationship to the daughters.

The defendant expressed his remorse, as well as his willingness to repay the amount due CMH by monthly payments and to abide by any other court-ordered requirements.

The trial court applied an enhancement factor that the defendant abused a position of private trust. Mitigating factors applied were the lack of a criminal record, the defendant's remorse, and that the defendant's conduct did not cause or threaten serious bodily injury. The minimum sentence of eight years was imposed. The defendant does not contest the length of the sentence.

The trial court noted that the amount of injury to the victim, $113,797, was almost twice the minimum required to qualify as a Class B felony. The trial court observed that the defendant's lack of a criminal record and willingness to pay restitution evidenced some signs of rehabilitation but questioned whether a defendant who does not apologize or admit his criminal conduct could be "really rehabilitated."

Next, the trial court said that the defendant's recent failure to pay the full child support indicated a manner of thinking that led to the defendant's justification of the offenses. The trial court specifically found that confinement was necessary to avoid depreciation of the seriousness of the offense. The defendant was then ordered to serve the eight-year sentence in incarceration.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative

showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401(d), Sentencing Commission Comments. In conducting our de novo review, this court must consider: (a) the evidence adduced at trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel as to sentencing alternatives; (e) the nature and characteristics of the offense; (f) the enhancement and mitigating factors; and (g) the defendant's potential or lack of potential for rehabilitation or treatment. Id. §§ 40-35-103(5), 210(b).

The defendant herein was eligible for alternative sentencing as his sentence did not exceed eight years and as the offense was not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2003). The defendant was not entitled to the presumption for alternative sentencing afforded those defendants convicted of lesser felonies and sentenced as especially mitigated or standard offenders. See T.C.A. § 40-35-102(6).

Sentencing considerations codified by the legislature provide the following:

(1)     Sentences involving confinement should be based on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2003). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See T.C.A. § 40-35-103(2), (4) (2003). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. §§ 40-35-103(5), -210(b)(5) (2003); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

In this case, the trial court found that the defendant did not have a history of criminal conduct and that less restrictive measures than confinement had not been applied in the past. However, the trial court did find that confinement was necessary to avoid depreciating the seriousness of the offense. In doing so, the trial court apparently relied in part on the circumstances of the offense, as evidenced by its comments on the amount of the theft. A denial of alternative sentencing, based on the circumstances of the offense "as committed must be especially violent, horrifying, shocking,

reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (quoting State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985)). The trial court made no such finding on the record. However, the trial court did question the defendant's potential for full rehabilitation and the defendant's failure to take responsibility, as well as recent failure to make full child support payments.

We conclude that the sentence of full confinement did not conform to the principles set forth in Tennessee Code Annotated section 40-35-103(1). The trial court did not and, in our view, could not have justifiably found the circumstances of the offense so egregious as to outweigh the factors favoring alternative sentencing. The amount of the theft is not, in itself, a bar to alternative sentencing. See, e.g., State v. Charles Stillwell, No. W2000-00392-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 327 (Tenn. Crim. App. May 1, 2001, at Jackson)(alternative sentence granted on facts supporting theft of $150,000); State v. Millsaps, 920 S.W.2d 267 at 271-72 (Tenn. Crim. App. 1995) (alternative sentence granted for embezzlement from employer of $80,220); State v. Lynda Gayle Kirkland, No. 03C01-9606-CR-00248, 1997 Tenn. Crim. App. LEXIS 114 (Tenn. Crim. App. Feb. 12, 1997, at Knoxville) (alternative sentencing affirmed for theft from employer of $202,096.75); but cf. State v. Trotter, 201 S.W.3d 651 (Tenn. 2006) (circumstances surrounding theft of approximately $500,000 from employer justified denial of alternative sentencing based on seriousness and excessive nature of the offense).

The defendant herein expressed his remorse, which the trial court accredited. Nevertheless, the trial court expressed doubts that the defendant was capable of full rehabilitation in the absence of a full acknowledgment of his responsibility. However, the defendant proposed a liberal plan of restitution. One goal in sentencing considerations is to use alternative sentencing to encourage reparations to victims. T.C.A. § 40-35-103(6). The trial court also expressed concern over the lack of recent child support payment by the defendant. The imposition of incarceration will render both restitution and child support unlikely, if not impossible.

For the foregoing reasons, we modify the defendant's sentence to serve six months in the local jail or workhouse, with eligibility for work release if available, followed by supervised probation for the remainder of his sentence. This cause is remanded for the determination and setting of restitution payments. Said payments are to be sufficient to satisfy the restitution within the defendant's probationary period, and such period can be extended up to and including the statutory maximum within the Class B range. We hereby remand for sentencing in conformance with this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE