# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 27, 2012 Session

## STATE OF TENNESSEE v. EDDIE JOE WHITAKER

**Direct Appeal from the Criminal Court for Campbell County**
**No. 14225     E. Shayne Sexton, Judge**

———————————————

**No. E2011-01372-CCA-R3-CD - Filed October 3, 2012**

———————————————

Defendant, Eddie Joe Whitaker, was indicted by the Campbell County Grand Jury for driving under the influence (DUI). Following a jury trial, Defendant was convicted as charged and sentenced by the trial court to 11 months and 29 days to be served at 75 percent incarceration. Defendant appeals his conviction and sentence and asserts: 1) the evidence at trial was insufficient to support his conviction; and 2) his sentence was excessive. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Michael G. Hatmaker and Brent Gray, Jacksboro, Tennessee, for the appellant, Eddie Joe Whitaker.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William Paul Phillips, District Attorney General; and Natasha Wassom, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Facts*

On June 19, 2009, around 8:00 p.m., Officer Susan Sowder, of the LaFollette Police Department, was parked at the Tennessee welcome center on I-75 to watch for Defendant's vehicle because she had been alerted that it was a possible "drunk driver." When she saw the vehicle, a white tow truck with "Whitaker Towing" written on the side, she followed it.

Officer Sowder testified that Defendant was driving at a slow rate of speed, and he crossed the white line twice before exiting the interstate. Officer Sowder observed the vehicle cross the white line again on the exit ramp, and she activated her lights and siren. Defendant did not stop, but instead proceeded to drive to a Shell gas station in Jellico a short distance from the exit. Officer Sowder observed Defendant's vehicle stop in the path of oncoming traffic when he turned left into the gas station.

Officer Sowder stopped and instructed Defendant to stay inside his vehicle, but he exited his vehicle instead. Officer Sowder approached Defendant and asked for his driver's license, insurance, and registration. Defendant "was kind of leaning on the truck" and "fumbling through some cards." He handed Officer Sowder an insurance card for another vehicle, and she handed it back to him. Defendant then handed Officer Sowder "a stack of cards" and asked her to find it, saying "he couldn't see enough to get it." Officer Sowder located Defendant's driver's license and insurance card. She asked Defendant if he had been drinking or if he had taken any medication, and Defendant stated that he had not. Officer Sowder noticed that Defendant's eyes were bloodshot and his speech was slurred. While Officer Sowder was searching through Defendant's cards, Defendant offered to submit to a blood alcohol test. He also told her that he had a scanner in his truck, and he knew that he was going to be pulled over. Officer Sowder did not smell any alcohol. She testified that Defendant's behavior was consistent with the use of "a narcotic or Methadone, something that altered his thinking, made him drowsy."

Officer Sowder asked Defendant to perform two field sobriety tests. She asked him to perform the nine-step walk and turn and the one-leg stand. Defendant stated that he did not have any medical condition that would prevent him from performing the tests. Officer Sowder testified that Defendant performed "very poorly" on both tests, exhibiting six of the eight clues of intoxication in the walk and turn and three of the four clues of intoxication in the one-leg stand. Defendant's behavior during the field sobriety tests went "from being agitated to borderline crying and wiping tears." Based on Defendant's performance on the field sobriety tests, his driving, and his appearance, Officer Sowder determined that Defendant was impaired, and she placed him under arrest. Defendant was "very aggravated" and was "rambling" that Officer Sowder was harassing him and that he was going to sue Officer Sowder. While Officer Sowder was transporting Defendant to the police department, Defendant "cried and said [she] was picking on him." At the police station, Officer Sowder read an implied consent form to Defendant, but Defendant refused to sign the form. Defendant also refused to submit to a blood alcohol test because "he was afraid of needles." Officer Sowder did not find any alcohol or drugs inside Defendant's vehicle or on his person.

Officer Jeff Ivey testified that he responded to a call to assist Officer Sowder at the Shell station. When Officer Ivey arrived, Defendant had already performed the field sobriety

tests and had been placed under arrest. Officer Sowder patted down Defendant and placed him inside the patrol car. Officer Ivey did not find any drugs or weapons on Defendant's person. Officer Sowder observed that Defendant appeared "kind of sleepy, droopy eyes, kind of watery eyed, kind of heavy tongue[d], a little bit unsteady." Officer Ivey testified that Defendant did not smell of alcohol. Officer Ivey followed Officer Sowder to the police station and did another search of Defendant during booking. Officer Ivey was present when Officer Sowder read the implied consent form to Defendant. He testified that Defendant initially agreed to submit to a blood alcohol test but later refused to sign the implied consent form. Officer Ivey did not have video equipment in his patrol car on the date of the incident.

Wilma Whitaker, Defendant's sister-in-law, testified on behalf of Defendant. Ms. Whitaker testified that she had been married to Defendant's brother for 32 years and that she knew Defendant well. She testified that she was working at the Shell Station on the night of the incident. At approximately 6:00 or 7:00 p.m., Defendant bought gasoline there for his tow truck. Ms. Whitaker spoke to Defendant, and she testified that he did not appear to be intoxicated. Defendant stated that he was going to pick up a vehicle. Ms. Whitaker was still working later that evening when she saw Defendant pull into the parking lot followed by a police car. She saw Defendant get out of his truck and talk to Officer Sowder. Ms. Whitaker testified that she did not see Defendant stumble or lean against his truck. She testified that she did not hear anything that Defendant and Officer Sowder said. She called her husband, and he arrived shortly thereafter.

Clyde Whitaker, Defendant's brother, testified that he drove to the Shell station after he received a call from his wife. He watched Defendant perform a field sobriety test. Mr. Whitaker testified that Defendant did not stumble and that he "didn't see nothing [sic] out of the ordinary." He testified that it "seemed to [him] that [Defendant] was sober." Mr. Whitaker saw Defendant perform three field sobriety tests, "nose, walking, [and] bumper." After Defendant was placed under arrest, Mr. Whitaker asked Officer Sowder if he could drive Defendant's truck home. He testified that Officer Sowder stated "if [he] didn't want to go to jail, [he] better go on about [his] business." He testified that she also stated that "[the] Whitakers thought [they] owned the town and she would prove it different." Mr. Whitaker left the gas station before Officer Ivey arrived. On cross-examination, Mr. Whitaker testified that he was "a good little distance away" from Defendant and Officer Sowder when he watched Defendant perform the field sobriety tests, and he acknowledged that he had no training in field sobriety tests.

Officer Sowder testified in rebuttal that Mr. Whitaker did not approach her and she did not have a conversation with him. She also testified that Defendant performed the Horizontal Gaze Nystagmus (HGN) test in addition to the two field sobriety tests she testified about on direct examination. She testified that she "gave [Defendant] two physical tests, one

HGN," and that she had not included the HGN in her direct examination testimony because she is not an expert on the HGN, and she believed that she was "not allowed to testify" about it.

Defendant did not testify or offer any other proof at trial.

*Sentencing*

At the sentencing hearing, Officer Sowder testified that on August 10, 2010, after Defendant was convicted and his license revoked, she and Officer Cody Frazier were standing outside of the courthouse when they saw Defendant drive by in an orange pickup truck. She verified that Defendant's driver's license had been revoked and confronted Defendant. She directed Defendant to forfeit his driver's license to the County Clerk's office.

On September 6, 2010, Officer Sowder, while off-duty, saw Defendant driving again, and she informed the police department. On cross-examination, Officer Sowder testified that she did not issue a citation to Defendant on either occasion because on August 10, 2010, an employee at the County Clerk's office informed her that because Defendant's license had not been forfeited, "the system . . . still showed he had a [valid] driver's license," and on September 6, 2010, she was off-duty and her son was with her. The State also introduced certified copies of judgments of convictions indicating that Defendant had four prior felony convictions and two prior misdemeanor convictions.

At the conclusion of the sentencing hearing, the trial court found that

> [b]ased on [Defendant's] long history of criminal conduct and based upon
> the fact that measures less restrictive than confinement have been frequently
> or recently – or frequently provided – applied unsuccessfully to this
> defendant, this Court is going to grant the State's request to find – to
> sentence the defendant to 11 months, 29 days which is the maximum
> punishment.

The trial court stated, "this particular conviction might suggest 11/29 with a minimum mandatory, but [Defendant's] history does not." The trial court also gave "some weight" to Defendant's "behavior since the time of the conviction . . . that he has continued to break the law. . . ." Finally, the trial court imposed the maximum fine of $1,500.

*Analysis*

I.      Sufficiency of the evidence

Defendant asserts that the evidence at trial was insufficient to convict him of DUI. Our standard of review when a defendant challenges the sufficiency of the evidence on appeal is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

This Court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn.1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

This Court must afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Smith*, 24

S.W.3d 274, 279 (Tenn. 2000)). "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005).

The Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; . . . .

Tenn. Code Ann. § 55-10-401(a)(1).

The evidence, viewed in the light most favorable to the State, shows that Defendant was driving his tow truck at a slow rate of speed on I-75 and that he crossed the white line twice. As he exited the interstate, he crossed the white line again. Officer Sowder activated her emergency lights, and Defendant did not immediately stop his vehicle. He instead continued driving and crossed over two lanes of oncoming traffic to stop at a gas station. Officer Sowder observed Defendant stop his vehicle in the lanes of oncoming traffic. Contrary to Officer Sowder's instruction to stay in the vehicle, Defendant exited his vehicle and leaned against it. When Officer Sowder asked Defendant for his driver's license, registration, and proof of insurance, Defendant fumbled through a stack of cards and produced an insurance card for another vehicle before handing the cards to Officer Sowder to search through. Officer Sowder observed that Defendant's eyes were bloodshot, his speech was slurred, and he appeared drowsy. Officer Ivey also observed that Defendant appeared sleepy, spoke with a "heavy tongue," and was unsteady on his feet. Defendant's poor performance on two field sobriety tests indicated that he was intoxicated. Defendant refused to submit to a blood alcohol test, and he refused to sign the implied consent form.

Defendant argues that Officer Sowder's testimony was "inconsistent" and refuted by the testimony of other witnesses. Defendant attacks Officer Sowder's credibility, pointing to her testimony: 1) that the Shell station is located to the left of the exit ramp on I-75, while two other witnesses testified that it was to the right; 2) that she and Defendant were the only ones present at the scene, while two other witnesses testified that they were also present at

the gas station; and 3) that Defendant stumbled when he was performing the field sobriety tests, while two other witnesses testified that Defendant did not stumble.

We note that it is the jury's prerogative to evaluate and weigh the evidence. Any alleged inconsistent statements and credibility issues were brought out on direct and/or cross-examination. The weight and credibility of the testimony of a witness and the reconciliation of conflicts in testimony, if any, are matters entrusted exclusively to the jury. By its verdict, the jury exercised its prerogative and chose to accredit the testimony of the State's witnesses. It is the jury who is charged with making credibility determinations, not this Court. *Smith*, 24 S.W.3d at 278. It is not the function of this Court to reweigh the credibility of witnesses on appeal. *Id*. at 278–79. There was sufficient evidence to support a jury finding that the Defendant was guilty of DUI. We will not disturb their decision. Defendant is not entitled to relief on this issue.

II.    Length of sentence

Defendant contends that his sentence is excessive. Defendant complains that the trial court erred by ordering him to serve 75 percent of his 11 months and 29 days sentence in confinement.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). The sentence is presumed correct if the record affirmatively shows that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. Our review of the record reflects that the trial court considered the sentencing principles and all relevant facts and circumstances, and as such our review is de novo with a presumption of correctness. *See* Tenn.Code Ann. § 40-35-401(d); *Ashby*, 823 S.W.2d at 169.

Sentencing for DUI convictions is controlled by Tennessee Code Annotated § 55-10-403(a)(1). For a first offense DUI, a defendant must receive a sentence of confinement of not less than 48 hours and not more than 11 months and 29 days. *See* Tenn. Code Ann. § 55-10-403(s)(1). The statute further provides that:

> all persons sentenced under subsection (a) shall, in addition to the service
> of at least the minimum sentence, be required to serve the difference
> between the time actually served and the maximum sentence on probation.

Tenn. Code Ann. § 55-10-403(c). Accordingly, the length of a defendant's sentence for DUI is set at 11 months and 29 days, the maximum sentence, with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended to probation. *See State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *State v. Combs*, 945 S.W.2d 770 (Tenn. Crim. App. 1996).

While otherwise entitled to the same considerations under the Sentencing Reform Act, unlike a felon, a defendant convicted of a misdemeanor is not entitled to the presumption of a minimum sentence. *See State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). Rather, in sentencing a misdemeanor defendant, the trial court shall fix a percentage of the sentence that the defendant must serve in confinement before being eligible for release into rehabilitative programs. Tenn. Code Ann. § 40-35-302(d). A DUI offender, however, may be required to serve up to 100 percent of his or her sentence. *State v. Palmer*, 902 S.W.2d 391, 393-94 (Tenn. 1995); *see also* Tenn. Code Ann. § 55-10-403(m) ("Nothing in . . . the Sentencing Reform Act of 1989, shall be construed as altering, amending, or decreasing the penalties established in this section for the offense of driving under the influence of an intoxicant."). In determining the percentage of the sentence to be served in confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. *See* Tenn. Code Ann. § 40-35-302(d); *Troutman*, 979 S.W.2d at 274.

In determining if incarceration is appropriate, a trial court considers: (1) the need to protect society by restraining a defendant having a long history of criminal conduct; (2) the need to avoid depreciating the seriousness of the offense; (3) whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses; and (4) whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also Ashby*, 823 S .W.2d at 169; *State v. Grigsby*, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); *State v. Millsaps*, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

In this case, the trial court ordered that Defendant serve 75 percent of his sentence, or 273 days, in confinement. In sentencing the defendant, the trial court placed great emphasis on Defendant's prior record. Defendant's prior felony and misdemeanor convictions were the basis of the trial court's decision to increase Defendant's incarceration above the 48-hour minimum. At the time of sentencing, Defendant had one prior federal conviction for unlawful possession of a firearm; three prior state felony convictions: one for aggravated assault, another for possession of a Schedule II controlled substance with intent to sell or deliver, and a third for possession of marijuana with intent to sell or deliver; and two prior misdemeanor convictions for possession of marijuana in1995 and in 1998. The trial court also stated in its findings that other less restrictive measures had been applied

unsuccessfully to Defendant and the court noted that Defendant had continued to drive after his driver's license was revoked.

Defendant does not suggest any mitigating factors that the trial court failed to consider. Based upon Defendant's prior record, the trial court denied full probation to Defendant after service of the statutory minimum incarceration of 48 hours for a first offense DUI. After review, we hold that the trial court did not err. The trial court stated its reasons on the record for sentencing Defendant above the statutory minimum, and we conclude that the sentence imposed by the trial court is neither excessive nor inconsistent with the sentencing principles. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE