# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned On Briefs August 14, 2012

## STATE OF TENNESSEE v. OTIS B. OWENS

**Appeal from the Circuit Court for Montgomery County**
**No. 41100034   John H. Gasaway, Judge**

---

**No.  M2011-02230-CCA-R3-CD - Filed December 12, 2012**

---

Appellant, Otis B. Owens, pled guilty to arson and vandalism of property valued at over $60,000.  As per the guilty plea the length and manner of service of sentence was to be determined by the trial court after a hearing.  The trial court sentenced Appellant to an effective sentence of eight years.  Appellant appeals, arguing that the trial court improperly denied an alternative sentence and that the trial court improperly applied enhancement factors in determining the length of the sentence.  After a review of the record, we determine that the trial court properly sentenced Appellant to an effective eight-year sentence, and,  in order to avoid depreciating the seriousness of the offense, did not abuse its discretion in denying an alternative sentence.  Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Christopher G. Clark, Clarksville, Tennessee, for the appellant Otis B. Owens.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; John W. Carney, District Attorney General; and Timothy Peters, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. FACTS

In January of 2011, Appellant was indicted by the Montgomery County Grand Jury for one count of arson, four counts of cruelty to animals, and one count of vandalism of

property valued at over $60,000. The charges stemmed from two house fires that were intentionally set by Appellant at his home and the home of Cameron and Barbara Owens, Appellant's brother and sister-in-law.

In September of 2011, Appellant pled guilty to one count of arson, a Class C felony, and one count of vandalism of property valued at over $60,000, a Class B felony. The transcript of the guilty plea hearing is not included in the record on appeal.

The trial court held a separate sentencing hearing. At the hearing, the presentence report was introduced along with Appellant's written statement. The presentence report contained an "Agency Statement" which described the events leading up to Appellant's arrest as follows:

> Officer was dispatched to fire on Dailey Road with two structures (homes) on fire. Upon my arrival Woodlawn Volunteer Fire Department was on the scene. Officer made contact with the witnesses who advised him Mr. Otis Owens intentionally set the fires. Mrs. Barbara Owens stated that her brother-in-law Otis called her and stated "your house is on fire and so is mine." Mr. Otis Owens was detained by the officer for further investigation. Investigator Blevins arrived on the scene and took over the investigation. Mr. Owens was transported to CI for questioning. . . . Mr. Owens was also slightly injured and was taken to Gateway ER to be checked.

"[Appellant's] version" of the events, contained in the presentence report, reads as follows:

> This incident is the culmination of four and a half years of intimidation, petty theft, and both physical and mental abuse directed towards me by my brother, Cam[e]ron Owens, his son Rodney Owens and Rodney's children. Cameron's wife Barbara merely treated me like a menial. It was at my brother's insistence and approval that Rodney and his children harassed me every time they were near me. I was not going to allow my brother to steal my home which was the only major possession that I had left. It was at his adament [sic] insistence that I had [sic] put a solid masonry foundation under my modular home and he well knew that it would cost more to move the home than the home was worth. He planned it that way he knew just how much the permitting, survey, etc. had cost. He goaded me incessantly unless he wanted something from me that he couldn't steal. Then he would actually act human. Otherwise he would bellow "this is my land and you will do what I tell you to do." He loved to call me his "good little nigger."

Please note that the use of alcohol wasn't a factor in the offense at all. No alcohol was consumed until after the fires had been [started] and then only one twelve ounce can after which I was taken into custody.

Footnote: Just prior to my being taken to custody my nephew attacked me from the rear (he's basically a coward) in full view of the police investigator and the whole woodlawn volunteer fire department but he was never charged even though he injured me seriously enough that I required medical treatment. Why?

Once arrested, Appellant completed a written statement in which he explained that he moved from Florida to Tennessee five years prior to the incident. He bought a double wide trailer and placed it on part of his brother's property. Appellant stated that he "paid for [his] part" but that his brother tried to evict him from the property in April of 2010. Appellant was eventually informed by Cameron Owens's attorney that he would have to vacate the residence by July 20, 2010. Once told that he would have to vacate the property, Appellant stated that he "bought a gas can" and some gas, "poured gas on [his] brother's house and used a [piece] of cloth soaked in gas" to set the house on fire. Appellant knew that there was no one at home at the time. Appellant then set fire to his own house before calling Barbara Owens to tell her that the house was on fire. Appellant claimed that he "did this because he had had enough and didn't have anywhere to go."

Both homes were a total loss as a result of the fire. Cameron Owens testified that he lost four family pets in the fire, two of which must have been let back into the house by someone prior to the fire. Cameron Owens was repaid $377,000 by his insurance company for his loss but testified that he lost approximately $53,000 on top of what he was reimbursed by the insurance company.

Cameron Owens explained that his brother moved to the property five years earlier. When he moved in, Appellant gave Cameron Owens $30,000 to hold for him to buy a home and get whatever needed to be done, such as septic tanks and power lines. Cameron Owens put the money into a checking account, and all the money was used by Appellant to fix a home on the property. At some point, there was a "falling out" between the two brothers, and Appellant was evicted from the property on the day of the fires.

Appellant testified at the hearing. He was 75 years old. He testified that he gave his brother $30,000 when he moved to Tennessee. This was his life savings. Appellant was under the impression that Cameron Owens was going to eventually deed some land to Appellant and furnish him with paperwork stating that he could live on the land as long as he wanted to do so. Appellant claimed that Cameron failed to do so and the brothers had a

-3-

"falling out." Appellant admitted that after he was evicted he burned down the houses. Appellant stated that he regretted his actions "to a certain extent." He denied knowing that there were animals in the house and expressed remorse over their deaths. Appellant explained that he burned down Cameron Owens's home to show him how it felt not to have a home.

At the conclusion of the hearing, the trial court applied one enhancement factor, the amount of damage to the property was particularly great. *See* T.C.A. § 40-35-114(6). The trial court also considered one mitigating factor, that the criminal conduct neither caused nor threatened serious bodily injury but gave this factor little weight. *See* T.C.A. § 40-35-113(1). The trial court sentenced Appellant to five years for arson and eight years for vandalism, ordering the sentences to be served concurrently.

The trial court denied an alternative sentence, finding that confinement was necessary to avoid depreciating the seriousness of the offense. Appellant appeals.

*Analysis*

On appeal, Appellant argues that the trial court improperly applied an enhancement factor, refused to apply mitigating factors, and erred by denying an alternative sentence. The State disagrees, arguing first that Appellant has failed to present an adequate record for this Court's review by failing to include a copy of the transcript of the guilty plea hearing. Thus, the State argues that we must presume that the findings of the trial court are correct. In the alternative, the State insists that the record supports the findings of the trial court.

Initially, we must address the State's assertion that Appellant has waived the issues for failing to include a transcript from the guilty plea hearing in the record on appeal. This Court has noted that the "guilty plea hearing is the equivalent of a trial, in that it allows the State the opportunity to present the facts underlying the offense." *State v. Keen*, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999). To that end, "a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed." *Id.* at 844.

In the case herein, Appellant pled guilty to arson and vandalism without an agreed-upon sentence. The length and manner of service of the sentence were to be determined by the trial court after a sentencing hearing. In our review, we note that there is a split among previous opinions issued by this Court over whether, on appellate review, we should presume the correctness of the trial court's sentencing determination where the guilty plea hearing transcript does not appear in the record. Several of the decisions determine that this Court should address the merits of the sentencing determination if a review is possible without the

-4-

transcript, while others have concluded that an appellant waives the right to a full review by failing to include the transcript. *See State v. Edward L. Baird*, No. E2011-01763-CCA-R3-CD, 2012 WL 1867275, at *4 (Tenn. Crim. App., at Knoxville, May 23, 2012); *State v. Darren Allan Vincent*, No. M2010-02468-CCA-R3-CD, 2011 WL 4346659, at *5 (Tenn. Crim. App., at Nashville, Jan. 20, 2012) (Bivins, J., concurring); *State v. Anna M. Steward*, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *2-5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2011); *State v. Alfred Gettner*, No. E2010-00104-CCA-R3-CD, 2011 WL 3655140, at *4 (Tenn. Crim. App., at Knoxville, Aug. 19, 2011); *but see Darren Allan Vincent*, 2012 WL 187347, at *2 (majority opinion); *Anna M. Steward*, 2011 WL 4346659, at *5-6 (Tipton, P.J., concurring); *Alfred Gettner*, 2011 WL 3655140, at *5 (Witt, J., concurring). *See generally Keen*, 996 S.W.2d at 843-44 (holding that, despite a "bare" record, it was sufficient to reach the merits, but emphasizing the importance of including the guilty plea transcript in appellate record).[1] Despite the appearance that in the controlling authority of *Keen*, inclusion of the guilty plea transcript is preferred, and is often necessary, we have determined that in this case the record is adequate for a thorough consideration of the merits without inclusion of the transcript of the guilty plea hearing.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing;

---

[1] We acknowledge that the Tennessee Supreme Court has granted permission to appeal in a case that may determine this issue. *See State v. Christine Caudle*, No. M2010-01172-CCA-R3-CD, 2011 WL 6152286, at *5 (Tenn. Crim. App, at Nashville, Dec. 8, 2011), *perm. app. granted*, (Tenn. April 12, 2012).

and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006).

At the outset we note that Appellant committed the criminal offenses at issue in July of 2010; therefore, the 2005 amendments to the Sentencing Act apply to our review of his sentencing. The 2005 amendments to the Sentencing Act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[T]he 2005 amendments [to the Sentencing Act] deleted as ground for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).

In the case herein, Appellant was charged with multiple offenses. Appellant pled guilty to arson and vandalism. Arson is a Class C felony that carries a sentencing range of three to six years for a Range I, standard offender. T.C.A. §§ 39-14-301(b)(1), 40-35-112(a)(3). Vandalism is a Class B felony that carries a sentencing range of eight to twelve years for a Range I, standard offender. T.C.A. §§ 39-14-408, 39-14-105(5).

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46. The presentence report indicated that Appellant was 75 years of age, a widower, and had no prior criminal record. The trial court applied one enhancement

factor to Appellant's sentence for arson: (6) that the amount of damage to property sustained by or taken from, the victim was particularly great. T.C.A. § 40-35-114(6). The record supports the existence of the enhancement factor. The victim lost his home and all of his possessions, sustaining a loss of over $400,000, of which only a portion was reimbursed through insurance.

Likewise, we conclude that the trial court properly considered and applied several mitigating factors, including (1) Appellant's criminal conduct neither caused nor threatened serious bodily injury and under the catch-all (13), Appellant acted out of desperation. T.C.A. § 40-35-113(1). Appellant does not disagree with the application of these mitigating factors, but complains that the trial court did not articulate the weight given to the factors. Again, "the 2005 amendments [to the Sentencing Act] deleted as ground for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *Carter*, 254 S.W.3d at 344. This issue is without merit.

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

> A defendant who does not fall within this class of offenders:

> [A]nd who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . A court shall consider, but is not bound by, this advisory sentencing guideline.

T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* T.C.A. § 40-35-303(a).

All offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case.

*See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *see also State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

In the case herein, Appellant pled guilty to both a Class B and Class C felony. Appellant was not entitled to consideration as a "favorable candidate" for alternative sentencing for his Class B felony conviction. T.C.A. § 40-35-102(6).

At the conclusion of the sentencing hearing, the trial court made the following statements with regard to Appellant's sentence: "as far as the manner of service is concerned, because of the need to deter others who just can't believe that they could do something like this and walk away he's got to serve confinement, . . . ." It appears that the trial court based its decision to deny alternative sentencing on the grounds that confinement was necessary to avoid depreciating the seriousness of the offense and that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses.

In *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), the supreme court held that if deterrence is the basis for the denial of an alternative sentence, "the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." *Id.* at 9. The supreme court went on to say that:

> The trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Hooper*, 29 S.W.3d at 10. The record herein does not contain evidence that would lead us to a conclusion that deterrence is a proper basis to deny alternative sentencing in this case. However, the trial court based the denial of alternative sentencing on considerations other than deterrence, i.e., the seriousness of the offense and the need to avoid depreciation of the offense. Because the denial of alternative sentencing is amply supported by these factors, we need not further address the *Hooper* criteria.

If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997) (citing *State v. Bingham*, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995) and *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)); *State v. Millsaps*, 920 S.W.2d 267 (Tenn. Crim. App. 1995) (citations omitted).

In the case herein, Appellant spent time and his own money fixing a home on his brother's property. When he became angry with the way that he perceived he was being treated by his family he decided to get revenge by buying a gas can and gas and setting fire to both his home and the home of his brother and sister-in-law. Appellant planned the act and had no concern for the four animals that perished in the fire. His actions caused considerable economic loss to the victims. Appellant only expressed remorse for his actions "to a certain extent."

While Appellant appears to have the potential for rehabilitation, due in part to his absence of a criminal history at the age of 75, in our view, the evidence of the crime is "reprehensible, offensive or otherwise of an excessive or exaggerated degree" to the extent that it outweighs their mitigating circumstances. We have reached the same conclusion upon less egregious facts. *See State v. Davis*, 940 S.W.2d 558, 559-61 (Tenn. 1997) (upholding the denial of probation for the offense of vandalism where the estimated damage was twelve hundred dollars based on the trial court's considering the seriousness of the offense and general deterrence where the vandalism was in retaliation for crossing a picket line).

Because we have concluded that the circumstances here are indeed offensive, excessive, and of an exaggerated degree, we hold the seriousness of the offense alone supports the denial of alternative sentencing and that a sentence of confinement is necessary to avoid depreciating the seriousness of the offense. As a result, we conclude that the evidence presented supports the decision of the trial court, and the trial court did not abuse its discretion in ordering Appellant to serve the sentence in confinement.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE

-10-